## TEXAS ANCHOR FENCE COMPANY v. CITY OF SAN ANTONIO.

### Decided December 3, 1902.

**1.—Cities—Purchase of Claim Against by Officer—Illegal Contract.**

Where plaintiff sold material to a city through an agent, and after it had forbidden the agent to collect the money due therefor he sold the claim to an alderman of the city at a discount, payment to such officer by the city is not a defense to an action by plaintiff for the purchase price of the material, since such a purchase by the alderman was rendered illegal both by the terms of the city charter and by article 264 of the Penal Code forbidding any officer of a city to purchase a claim against it.

**2.—Same—Credit.**

Where plaintiff had received from its agent and retained a part of the amount paid him by the alderman, supposing it to be money remitted to the credit of the agent's account generally, such amount should be credited on the claim against the city.

Appeal from the County Court of Bexar County. Tried below before Hon. R. B. Green.

*Cobbs & Hildebrand* and *W. P. Lobban,* for appellant.

*Frank H. Wash,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellant instituted this suit to recover of appellee the sum of $491, the purchase price of certain iron fencing and gates. The trial resulted adversely to appellant.

The facts disclose that appellee purchased the fencing and gates from appellant through the medium of George A. Hill, who was the agent of appellant. On the question of the authority of Hill to collect for material sold by him for his principal, the testimony was conflicting. The uncontroverted evidence showed that the material was

furnished by appellant, and that on January 31, 1902, L. Mahncke, an alderman of the city of San Antonio, paid to Hill the sum of $446, and Hill transferred to Mahncke the claim for $491 against the city. Prior to that date appellant had notified one of the aldermen of the city of San Antonio in person and by letter that Hill had no authority to collect the claim against the city. The alderman who received the notice swore that he at once, and before the transfer of the claim was made to Mahncke, notified the auditor that Hill had no authority to collect the money for the fence and gates. This was denied by the auditor, but it was admitted by the mayor, the auditor, and different aldermen that each of them was notified that the money must not be paid to Hill months before the amount of the voucher was paid to Mahncke. Whilst Hill received only $446, Mahncke collected from appellee the full sum of $491. It was in evidence that the city was without funds to pay for the fence and gates, and that Alderman Mahncke agreed to advance the money to Hill and wait on the city for repayment of the amount advanced.

We need not enter into a discussion of the law of agency as applied to the conduct of George A. Hill, and it may be conceded that the testimony was such as to the general authority of the agent, that had appellee paid the money to Hill without notice that in this particular instance appellant had not authorized him to collect it, it would be protected by such payment. It may also be conceded that Hill, under his powers as agent, had the authority to assign the claim, although there is nothing to indicate it, and that an innocent purchaser for value of the claim would be protected; and that payment by the city to him would exonerate it from further liability. We are not called upon to discuss that state of facts, for the facts of this case make out an entirely different case.

In article 264 of the Penal Code of Texas it is provided: "Any officer of this State or of any city or town therein who shall contract directly or indirectly, or become in any way interested in any contract for the purchase of any draft or order on the treasurer of such county, city or town, or for any jury certificate or any other debt, claim or demand for which said county, city or town may or can in any event be made liable, shall be punished by a fine of not less than ten or more than twenty times the amount of the order, draft, jury certificate, debt, claim or liability so purchased or contracted for."

The statute is very comprehensive in its terms, and not only includes any officer of the county, city or town who may contract directly or indirectly with such county, city or town, but any such officer who may become in any way interested in a contract for the purchase of any draft or order on the treasurer, or any debt, claim or demand for which the county, city or town can in any event be made liable. Do the facts of this case bring the aldermen who purchased the claim held by appellant against appellee within the terms of the statute? Was he in any way interested in any contract for the purchase of any draft

or order on the city treasurer, or any debt, claim or demand for which the city could in any event be made liable? By the testimony of the alderman himself and the mayor, the former was clearly brought within the terms of the statute. The city had no money, but desired a fence. The alderman agreed that if the city purchased the fence he would pay for it and would look to the city for repayment. Clearly he was interested in a contract for the purchase of a claim for which the city could be held liable. It may be that the alderman desired to accommodate the city, and that it was an act of kindness on his part to furnish the money, but the law does not look to the motives actuating the purchase by an officer of claims against the city, but denounces it and punishes it regardless of the motives. It is in the eyes of the law better that the city should go without improvements than that it should have its evidences of indebtedness handled by its officers, who should be in a position to act in the service of the city untrammeled by selfish motives and unincumbered by private interests. The law has in the strongest terms condemned any connection on the part of an officer with any of the indebtedness of a city, and when he violates its terms he can not claim any of the rights or immunities of an innocent purchaser, but his purchase of such indebtedness must be held, or grounds of public policy, illegal and void.

In addition to the inhibition involved in the penal code it is provided in the charter of the city of San Antonio that "no member of the city council or any officer of the corporation shall be directly or indirectly interested in any work, business or contract, the expense, price or consideration of which is paid from the city treasurer," etc. The alderman who bought the debt against the city was clearly interested in a contract, the price or consideration of which was to be paid out of the city treasury, as much so as any banker or broker who might have bought the paper of the city at a discount of over 8 per cent.

The purchase of the voucher by the officer of the city being condemned by the Penal Code and the city charter, was illegal and void, and payment of the voucher could not have been enforced by the officer in the courts of the State. In the case of Rue v. Railway, 74 Texas, 474, an employe of the railway sought to recover on a contract to furnish supplies to his employer. The railway company had been incorporated in Missouri, whose laws provided that no employe of any railroad corporation should be interested in furnishing supplies to the corporation. The court said: "That appellant was the stock agent and employe of appellee at the time the contract of lease was executed there is no controversy. It is equally clear to us that by the terms of the contract he became interested in furnishing supplies (forage for live stock) to appellee, and that he also became interested in the business of transportation as common carrier over the roads operated by appellee. * * * Had the contract been entered into by the president and secretary of the company after resolution adopted by the board of directors authorizing them to make it, and had it been executed with strict observance

of all formalities, it would have been void, because it was prohibited by the laws of the State from which appellee derived its existence and powers."

The Rue case was discussed in the case of Fowler v. Bell, 90 Texas, 150, and while the court did not deem it necessary to approve or dissent from the doctrine that the laws of the place of creation of a corporation would govern as to a contract in another State, it was held: "There was no law in Texas which would uphold such a contract as that made between these parties. The contract was so obviously contrary to good morals, fair dealing and honesty towards the railroad company, on the part of its officer, participated in by Rue, that it would seem to have been contrary to the public policy of this State, and therefore there was no conflict between the law of Missouri and the laws or public policy of Texas upon this question."

In the case of Knippa v. Stewart Iron Works, 66 Southwestern Reporter, 322, the appellee sued Uvalde County to recover a balance on a contract for the erection of a jail. Knippa, who was a county commissioner, intervened, claiming the amount due by reason of an assignment of the same to him by a subcontractor. This court held, through Associate Justice Neill, that the purchase of the debt against the county by the commissioner was in contravention of the statute, and therefore illegal and void. The opinion says: "However honest appellant may have been in his intentions, the contract by virtue of which he claims that he is entitled to the money is in derogation of the statute, and contrary to the spirit, if not the letter, of his official bond." Under the authority of that case, if appellant had sued appellee for the amount due on the contract before it had paid the alderman to whom the claim had been assigned by Hill, it would have recovered, and had the officer intervened, his claim would have been held illegal and that he was entitled to nothing.

In this case, however, the money was paid to one who had, in violation of law, purchased the claim, and after notice had been fully given that appellant was claiming the money. The city was charged with the knowledge that under the laws of Texas and its own charter, the alderman could not buy the claim against the city from Hill or anyone else, and when it is sued for the debt it can not be heard to defend against the claim by proving a payment to one who had obtained the claim in defiance of the laws of the State. It can not plead innocence on the subject and the hardship of a double payment, because it knew in the first place that Hill, as agent of appellant, had no authority to transfer the claim to Mahncke, and that the latter could not purchase such a claim. With full knowledge of the law and the facts it disregarded the rights of appellant and paid out the money to one not entitled to receive it.

If appellant had received the money from Hill that he received from Mahncke, it could not in equity and good conscience come into a court and ask to be paid again, and if it received any of the money, that

amount should be deducted from the amount for which appellee should be held liable.

Hill testified, and his evidence is not contradicted, that he remitted to appellant $200 of the money he received from Mahncke, and about that time appellant admits that it received that sum, not knowing, however, that it was part of the purchase price of the fence and gates, but thinking it was a payment on amounts due by Hill. There is nothing in the evidence that tends to show a ratification of the assignment made by Hill to Mahncke. If there were, we are of the opinion that it would preclude a recovery on the part of appellant, because the law would not allow a party to take advantage of its own act in conniving at and assisting in a violation of a penal statute.

Having innocently received $200 on the amount paid to Hill by Mahncke, appellant is not thereby precluded from recovery of the balance, but that amount should, we think, be deducted from the amount of the claim, and judgment be rendered for the balance.

The judgment of the County Court is reversed, and judgment here rendered that appellant recover of appellee the sum of $291, with 6 per cent interest thereon from January 31, 1901, and all costs of this and the lower court.

*Reversed and rendered.*