**MEYERS et al. v. WALKER et al.    (No. 99.)**

(Court of Civil Appeals of Texas.    Eastland.
June 2, 1925.)

**I. Municipal corporations ⊕⟹231(2) — Paving contract let, on condition successful bidder pay expenses of officials on inspection trips, held void.**

Where, after bids for paving were opened, but before acceptance, agreement was made that members of city council make inspection trips to nearby cities, with expenses paid by successful bidder, contract made on such conditions was *held* void as against public policy. ˙

**2. Municipal corporations ⊕⟹248(2) — Void paving contract held not subject to ratification by newly elected city officials.**

Where contract for paving was void because of acceptance by city officials of expenses on inspection trips as against public policy, attempted ratification by newly elected officials would not make it valid.

Appeal from District Court, Dawson County; Clark M. Mullican, Judge.

Application by R. L. Meyers and others, for injunction to restrain Jesse Walker and others from selling street improvement bonds. Verdict for defendants, and petitioners appeal. Reversed and remanded.

˙Bean & Klett, of Lubbock, for appellants.
W. P. Dumas, of Dallas, and Garland, McGuire & Yonge, of Lamesa, for appellees.

RIDGELL, J.   R. L. Meyers and other property taxpayers of the city of Lamesa applied to the district court of Dawson county for an injunction, restraining appellees from selling or offering for sale $40,000 street improvement bonds of said city, and restraining them from declaring or enforcing the result of said election, and further from contracting for any street improvements; the injunction being dissolved, and an appeal taken to the Court of Civil Appeals, Second Supreme Judicial District at Fort Worth. The cause was reversed and remanded as appears. 264 S. W. 314, and (Tex. Sup.) 266 S. W. 499. ⟋

The appellant filed an amended original petition, alleging: That some time about the month of January of the year 1924, the city of Lamesa, Tex., acting by and through its officials, to wit, Jesse Walker, Mayor, and C. H. McCormick and J. R. Flaniken, Commissioners, and J. R. Lowrie, Secretary, received bids for the purpose of awarding contract for street improvements to the approximate extent of $120,000, such improvements to consist of paving to be designated by city officials out of various types, such as bitulithic, rock asphalt, amesite, brick, etc., and that there were several bidders for the contract, among them the Panhandle Construction Company, which was bidding on amesite paving and also brick, and that one Jim Maston was promoting amesite material for the amesite paving. That, after the bids were filed, and before the contract was awarded, there was an agreement among several of the bidders and the mayor and commissioners, respectively, and also with said Jim Maston and the Panhandle Construction Company, to the effect that the bidder receiving the award of said contract would bear and pay the expenses of an inspection trip to Fort Worth and Dallas, Tex., and perhaps other points, and thereupon the said Jesse Walker, as mayor, and C. H. McCormick, as commissioner, of said city of Lamesa, and while acting in the capacity named, accompanied by the said Jim Maston, as entertainer and promoter of the amesite type of paving on which the Panhandle Construction Company was bidding, made the trip as agreed to the cities of Fort Worth and Dallas, Tex., and also to the city of Philadelphia, for the purpose of inspecting types of paving; the trip to Philadelphia having been made to look at amesite paving, the entire expenses of such a trip being roughly estimated at $1,000 or more. That tickets and meals and other expenses were paid by the said Jim Maston for the trip to Philadelphia. The said Jim Maston then bought tickets and transportation for their return to Texas. That such expenses and costs were paid from time to time in accordance with the agreement alleged. That said agreement and arrangements were in violation of the following Penal Code of the state of Texas, namely, article 376, reading as follows:

"If any officer of any county in this state, or of any city or town therein, shall become in any manner pecuniarily interested in any contracts made by such county, city or town, through its agents or otherwise, for the construction or repair of any bridge, road, street, alley or house, or any other work undertaken by such county, city or town, or shall become interested in any bid or proposal for such work or in the purchase or sale of anything made for or on account of such county, city or town, or who shall contract for or receive any money or property, or the representative of either, or any emolument or advantage whatsoever in consideration of such bid, proposal, contract, purchase or sale, he shall be fined in a sum of not less than fifty nor more than five hundred dollars."

Article 793, Rev. St., provides no member of city council shall be interested in a contract directly, etc.

That thereafter, on February 15, 1924, city council undertook to make and enter into a written contract for amesite paving with the Panhandle Construction Company, which contract appellants say is null and void and against public policy.

The defendant Panhandle Construction

Company answered that the present city officials of Lamesa, S. E. Cleveland, the present mayor, and commissioners, C. H. McCormick and O. K. Jones, ratified and confirmed the written contract previously made by the old city officials with the Panhandle Construction Company and attached a copy of order of the board to answer. The Panhandle Construction Company also attached a copy of contract, dated February 15, 1924. The other defendants in the suit filed an answer alleging that the contract made by the old city officials with the Panhandle Construction Company had been ratified by the new city officials. Panhandle Construction Company further answered, if it be true that the former board of commissioners of the city of Lamesa, Tex., being the board that made the contract, were, by reason of the matters, interested in the said contract, that, since said contract was made, there had been a change of the city officials of the city of Lamesa, and that the present city officials of the city of Lamesa had ratified and confirmed the said contract. The appellees also made special denial of plaintiff's allegations in petition, and on April 14, 1925, the cause was tried and the learned trial court instructed the jury to return a verdict for the appellees.

Appellants filed a motion for a new trial, which was overruled, and, having filed their bond, this cause is before this court for review.

### Opinion.

There are three assignments of error, but it will only be necessary to consider assignment No. 1, which complains that the trial court erred in directing a verdict against plaintiffs and rendering judgment against them, in that the contract is null and void and against public policy and cannot be ratified; that the city officials who undertook to make such contract were without authority, in that such city officials entered into an agreement with the bidders before the contract was awarded, to the effect that the bidder receiving the award of the contract would pay the expenses of the trip alleged in plaintiff's petition.

It has been the universal holding of our courts, where there is slight evidence in support of a proposition, the court should submit same to the jury, and it is within the province of the jury to pass upon the facts. The trial court in this case evidently concluded that, taking the most liberal view of the testimony, under the law the appellants were not entitled to the relief prayed for.

This case involves a great deal, for we are called upon, not only to pass upon a contract made by an administrative body, but to say under the evidence whether or not such contract is against public policy and therefore null and void. We feel that it is the duty of this court, in justice to public officials charged with fixed duties, as well as the public to whom the officials owe their duties, to fully present the material testimony, that we may arrive at the just legal rights of all parties involved.

J. R. Lowrie for the appellants testified that at the time of the bond election Mrs. Lowrie was city secretary, but that he was doing the work and was acquainted with the records. The bond election for street paving was held in December, 1923. About January 15, 1924, bids were advertised, and ten different firms filed bids on different types of paving. On January 4th, commissioners decided to inspect paving before awarding contract. The commissioner had opened the bids and had eliminated five of the bidders.

I think it was said that the city officials would inspect the different types of paving, and the contractor who would receive the contract would pay their expenses. Five bidders were eliminated and five left in. The Panhandle Construction Company was one of the bidders not omitted. While they were on this inspection trip, suit was filed.

Mr. Jesse Walker testified:

He was mayor of Lamesa in the month of December, 1923, and held that position until May, 1924. That he was present when the bids were opened, and that there was something said at that time about the city officials making a trip. It was suggested by the bidders that the city officials would go and look at the different character of pavement of the different promoters and bidders, and satisfy themselves as to the character of paving. That a majority of the commissioners voted to go. It was understood that the party who went into contract with the city was to pay for the trip of the city officials in looking at the different character of paving. The city officials did not agree to pay any of the expenses of the trip. The party who got the contract to put down the pavement was to pay the expenses of the trip; each party made this promise to the city officials. "This promise was made to each and all of us present at the time. Such promises were made after the bids were opened. These promises were made before the contract was awarded, and before the type of paving was selected. The first trip we went from Lamesa to Fort Worth and Dallas. I was with the city officials on that trip. Later on they made another trip to Fort Worth, Dallas, and Philadelphia, and I joined the city officials at Fort Worth. I have not been reimbursed for my trip to Fort Worth and Dallas. This was paid out of city funds. No one has reimbursed me except the city. Myself and some of the other city officials made a trip to Philadelphia, Pa. The amesite people paid our expenses from Dallas to Philadelphia and back. The trip was made to Philadelphia on the last trip we made to Dallas and Fort Worth, and C. H. McCormick from Lamesa, Ray Williams, who was county judge of Dawson county, W. S. Moore and Mr. Jim Maston all made the trip from Dallas to Philadelphia with us. It took us about a week to make the trip. I imagine the expenses to Philadelphia were something like $1,000. There were five of us on the trip. I would not have made the trip in question or

any part of it without a promise on the part of some one to pay the expenses thereof. I relied upon the promises made to me with reference to the expenses being paid by the parties. We made the trip to Philadelphia for the purpose of investigating the amesite pavement. We had under consideration several different types of pavement. Mr. John Dalrymple put in bids for both brick and amesite paving. He favored brick and advised brick paving to be done. He did not favor amesite paving, but would put it down if we wanted it."

The appellees introduced Mr. C. H. McCormick, who testified, in substance:

That he made the trip North, and that they inspected only amesite paving. "I am city commissioner of Lamesa."

It is sufficient to say he testified substantially as Mayor Walker or to agreement with contractors in regard to payment of expenses.

J. R. Lowrie testified:

"I was city secretary during period, and was present when agreement was made for successful bidder paying expenses of trip of inspection to Fort Worth and Dallas."

Ray Williams testified:

"I was county judge of Dawson county, and the county was interested in the pavement of the square. I met with city when bids were considered. In this meeting, when trip of inspection was mentioned, we settled on four different kinds of pavement, and it was agreed that we should make the trip to inspect, and the bidder who got the contract was to pay the expenses."

John Dalrymple testified:

"I did not enter any kind of contract with commissioners to pay their expenses to inspect different kinds of paving. I was representing Panhandle Construction Company in the contract with city."

[1] Under the admissions of the mayor and commissioners, would the contract be illegal and against public policy? We think so. "Contracts in their nature calculated to influence the action of public officers and the effect of which is to influence them one way or the other are against public policy." If a public official directly or indirectly has a pecuniary interest in a contract, no matter how honest he may be, and although he may not be influenced by the interest, such a contract so made is violative of the spirit and letter of our law, and is against public policy.

Authorities: Texas Anchor Fence Co. v. City of San Antonio, 30 Tex. Civ. App. 561, 71 S. W. 301; Knippa v. Stewart Iron Works (Tex. Civ. App.) 66 S. W. 322; 19 R. C. L. § 196, pp. 739, 897; Ferle v. City of Lansing, 189 Mich. 501, 155 N. W. 591, L. R. A. 1917C, 1096; Robinson v. Patterson, 71 Mich. 141, 39 N. W. 24; Meguire v. Corwine, 101 U. S. 108, 25 L. Ed. 899; Rigby v. State, 27 Tex. App.

55, 10 S. W. 760; Brown v. Bank, 137 Ind. 655, 37 N. E. 158, 24 L. R. A. 206; 28 Cyc. 650; Graves & Houtchens v. Diamond Hill Independent School District (Tex. Civ. App.) 243 S. W. 638.

Mr. Story on Contracts, § 546, says the expression "public policy" has never been defined by the courts but has been left loose and free of definition in the same manner as fraud. This rule may, however, be safely laid down, that whenever any contract conflicts with the morals of the time and contravenes any established interest of society, it is void as being against public policy.

[2] It must follow that, if the admission of the city commission is true, this contract is illegal and void. If this contract is illegal and against public policy, there is no power which can breathe life or validity into it, and the ratification attempted to be made by the city commission would be void. 19 R. C. L. § 196; 13 C. J. p. 506.

For the last few years the world has witnessed the greatest growth and progress of that in a hundred before. The government, the state, county, and municipality have undertaken the greatest road and street building program in the history of this country. Most every community has voted taxes to provide permanent roads, and the smallest of our towns are approaching city advantages in the way of paved streets and other improvements. It is but fair that the public money should be spent in the manner and way provided by law. These safeguards in letting contracts were not provided with the thought that the public official was corrupt, but that, in the expenditure of public money, the strictest requirement should be followed. Our lawmakers were wise in trying, not only to remove temptation, but to place the public official even above the suspicion of wrongdoing. The idea of keeping the public in the confidence of the official would bring co-operation and loyalty in the administration of government and enforcement of law, and these principles underlie the security of our government. The old adage, "Honesty is the best policy," would well be worn on the doorsteps of every home and in the heart of every serving person. If our government survives, it will be by reason of the confidence in the honesty of the officials and the fidelity of the people. The way to keep confidence is to abhor that which tends to evil and cleave to the right.

This trip of inspection was made, no doubt, with sincerest purpose and no intention of wrong, but the precedent is dangerous. If it were to the interest of the city that this inspection be made, then the city should pay it and thus leave the officials without the least obligation and absolutely removed from any semblance of influence. The greatest danger in approving such practice is that one favor would lead to another.

and loans, presents, and like innocent gifts might lead to a rivalry in offers which would destroy competition in* such matters and bring finally a season of corruption.

In view of the fact that the Panhandle Construction Company has denied making the agreement, the majority of this court believe that there is a disputed issue which requires that this cause be remanded. The writer has grave doubts that this cause should be remanded, for the reason, when this contract was made by admission of city, the vice existed, and the interest would be presumed. The fact the Panhandle Construction Company denied making such agreement would not alter or change the matter, because the city commission who first entered into this contract did so with the understanding that the bidder would reimburse the expenses of the inspection trip, and to that extent the officials manifestly would be interested. While not desiring to go to the extent of dissenting, I desire to express my doubts but that this case should be rendered.

In view of the disputed issue of fact, made by the denial of the Panhandle Construction Company, I yield and concur with my Brethren, and this cause will be reversed, and remanded for a new trial.