

# THE ATTORNEY GENERAL
## OF TEXAS

November 19, 1986

JIM MATTOX
ATTORNEY GENERAL

Mr. Vernon M. Arrell
Commissioner
Texas Rehabilitation Commission
118 East Riverside Drive
Austin, Texas  78704

Opinion No.  JM-578

Re:  Qualifications for membership on the Texas Planning Council for Developmental Disabilities

Dear Mr. Arrell:

You ask about the effect of certain laws relating to conflicts of interest and to qualifications for membership on the Texas Planning Council for Developmental Disabilities.  Section 112.012 of the Texas Human Resources Code states that "[t]he members of the [Texas Planning Council for Developmental Disabilities] shall be appointed by the governor in accordance with applicable federal developmental disability laws."  Section 6024 of Title 42 of the United States Code requires that each state which receives federal assistance for developmental disabilities "shall establish a State Planning Council which will serve as an advocate for persons with developmental disabilities."  42 U.S.C. §6024(a)(1) (Supp. III 1985).  Congress intended that the council help develop the state plan that is required by federal law prior to the state's receipt of federal financial aid. Id. §6024(b).  Promulgation of the state plan includes the specification and review of services to be provided to persons with developmental disabilities. Id.  Thus, the council's function is primarily advisory, recommending the type of services to be provided.  When the Texas Rehabilitation Commission contracts with private service providers, however, members of the council may be in a position to recommend or review a service provider in which the member may have a pecuniary interest.

You ask about a failure to comply (1) with the membership qualifications required by federal law, 42 U.S.C. §6024, (2) with section 8 of article 6252-9b, V.T.C.S., and (3) with common-law conflict of interest.  You do not ask whether certain individuals fail to comply with these laws; your question assumes noncompliance.  You focus on the effect of noncompliance, particularly noncompliance which arises subsequent to a valid appointment to the council:  i.e., whether this results in automatic vacation of the member's position or whether the member may simply abstain from participating in particular matters.

Section 6024(a)(1) of Title 42 requires that each state council include representatives from various state agencies which administer certain federal assistance programs, from higher education and

university-affiliated training facilities, from local agencies, and from nongovernmental agencies and private nonprofit groups concerned with services to persons with developmental disabilities.  Section 6024(a)(2) specifies that the council shall consist of a certain percentage of "consumer" members and sets forth qualifications for the consumer members:

> (2)  At least one-half of the membership of each such Council shall consist of persons who --
>
> (A)  are persons with developmental disabilities or parents or guardians of such persons, or
>
> (B)  are immediate relatives or guardians of persons with mentally impairing developmental disabilities, who are not employees of a state agency which receives funds or provides services under this subchapter, who are not managing employees (as defined in section 1126(b) of the Social Security Act [42 U.S.C. §1320a-5(b)]) of any other entity which receives funds or provides services under this subchapter, and who are not persons with an ownership or control interest (within the meaning of section 1124(a)(3) of the Social Security Act [42 U.S.C. §1320a-3(a)(3)]) with respect to such an entity. (Emphasis added).

42 U.S.C. §6024(a)(2).

Your concern focuses on the underscored qualifications in section 6024(a)(2)(B), those which involve pecuniary interests in service providers or in state agencies.  You ask about the effect of noncompliance with these requirements, particularly noncompliance which arises subsequent to a valid appointment.  You ask whether a violation of section 6024(a)(2)(B) results in automatic vacation of the member's position or whether the member may simply abstain from participating in matters involving a conflict. Neither alternative fully comprehends the effect of noncompliance with section 6024(a)(2)(B).

Section 6024(a)(2) sets forth certain qualifications for the consumer members of the state planning council required by federal law as a prerequisite to the receipt of federal assistance for developmental disability programs.  It is not unusual for acts calling for such advisory boards to require qualifications for council membership that avoid conflicts of interest.  Section 6024(a) does not provide for "automatic resignation" when a member fails to meet its qualifications, either at the time of appointment or at any time thereafter. Nor does the section authorize abstention to cure qualification defects.  The effect of noncompliance with section 6024(a)(2) is simply that -- noncompliance; the state would not have a state

planning council which meets the requirements of federal law. Although this failure does not necessarily invalidate state actions, it may ultimately affect the state's receipt and use of federal financial assistance. See 45 C.F.R. §1386.30 (1985); see generally Burgess v. Affleck, 683 F.2d 596 (1st Cir. 1982) (dealing with an improperly constituted "Medicaid" advisory committee subject to similar federal regulations).

Section 112.014 of the Human Resources Code provides for vacancies on the Council as follows:

> (a) A position on the council becomes vacant if:
>
>> (1) a member resigns from the council by providing written notice to the chair;
>>
>> (2) a member ceases to be a resident of this state; or
>>
>> (3) a member misses three consecutive regular or special council meetings.
>
> (b) If a position on the council becomes vacant, the chair shall provide written notice to the governor, agency commissioner, or executive director, as appropriate, requesting a new appointment to fill the remainder of the member's term.

This section does not provide for automatic vacation of a Council member's position for noncompliance with section 6024(a)(2) of the federal act.

Moreover, as indicated, section 112.012 of the Human Resources Code states that "members of the council shall be appointed by the governor in accordance with applicable federal developmental disability laws." Section 6024(a)(2) does not fix a maximum number of council members; it simply requires that at least 50% of the members meet certain qualifications. Although state law at one time fixed the number of council members, see Acts 1983, 68th Leg., ch. 970, §1, at 5272 (replaced by Acts 1985, 69th Leg., ch. 603, §14, at 2275), it no longer does so. See Tex. Hum. Res. Code §§112.012, 112.013. Section 112.012 grants the governor general discretion in making appointments, so long as he complies with federal developmental disability laws. This discretion includes the implied authority to change the number of members on the council -- particularly if this action is necessary for compliance with federal law. Consequently, a member of the council who failed to meet the requirements of section 6024(a)(2), either at the time of appointment or at any time thereafter, would not necessarily be prohibited from serving on the council. For this reason, Texas common-law principles of automatic resignation are

irrelevant. See generally Phagan v. State, 510 S.W.2d 655, 660-62 (Tex. Civ. App. - Fort Worth 1974, writ ref'd n.r.e.); Attorney General Opinions H-1065 (1977); H-578 (1975). In fact, section 6024(a)(1) expressly requires the appointment of council members who represent the agency which administers federal funds for state developmental disability programs. Thus, a member who became disqualified under section 6024(a)(2) because the member became an employee of the administering agency could technically serve under section 6024(a)(1). Although the governor could at any time request the resignation of council members who fail to comply with section 6024(a)(2), the section itself does not prohibit their service.

The result or effect on the council of not having 50% of its members meet the requirements of section 6024(a)(2) would simply be that the state would not have a council that met the requirements of federal law. To remedy the defect, the governor would have to appoint a sufficient number of "consumer" members to comply with section 6024(a)(2). Although the significance of this response would appear to moot your remaining questions about the effect of noncompliance, you also ask about the independent effect of an assumed violation of article 6252-9b and of common-law conflict of interest principles.

Article 6252-9b establishes a general state policy that no state officer or state employee shall have any interest in or engage in any business or activity that is in substantial conflict with the public duties of the officer or employee. V.T.C.S. art. 6252-9b, §1. Article 6252-9b effects this policy by requiring that certain public officers file financial statements and affidavits revealing certain financial interests. Id. §§3, 5; see also id. §6. Article 6252-9b is primarily a disclosure statute; it does not govern the qualifications of persons appointed or elected to particular offices. See Attorney General Opinion H-71 (1973). Moreover, because of the purely advisory nature of the Texas Planning Council for Developmental Disabilities and because the Council is not a major state agency, most of the Act's disclosure provisions do not apply to the council. See, e.g., Attorney General Opinion H-255 (1974) (only members of an agency named in the act as a "major state agency" must file a financial statement).

You inquire specifically about section 8 of article 6252-9b. Section 8 provides all state officers and employees with the following general ethical standards of conduct:

> (a) No state officer or state employee should accept or solicit any gift, favor, or service that might reasonably tend to influence him in the discharge of his official duties or that he knows or should know is being offered him with the intent to influence his official conduct.

> (b) No state officer or state employee should accept employment or engage in any business or professional activity which he might reasonably

expect would require or induce him to disclose confidential information acquired by reason of his official position.

(c) No state officer or state employee should accept other employment or compensation which could reasonably be expected to impair his independence of judgment in the performance of his official duties.

(d) No state officer or state employee should make personal investments which could reasonably be expected to create a substantial conflict between his private interest and the public interest.

(e) No state officer or state employee should intentionally or knowingly solicit, accept, or agree to accept any benefit for having exercised his official powers or performed his official duties in favor of another.

V.T.C.S. art. 6252-9b, §8.

Although article 6252-9b provides sanctions for certain officers in specific instances, see, e.g., §§6(c), 10(b), 12A(b), section 8 contains no civil or criminal penalties or removal sanctions. See Attorney General Opinion H-71. Accordingly, a member of the council would not be automatically disqualified from participating in a matter involving a conflict of interest under section 8 or from continuing to serve on the council because of a violation of section 8. Just because section 8 does not impose sanctions, however, does not mean that state officers and employees may ignore its ethical requirements. Ethical violations of section 8 must be decided on a case-by-case basis. See Attorney General Opinion H-1309 (1978). Accordingly, this opinion cannot comment on the effect of violations in general; the effect will depend upon the circumstances of the violation.

You also ask about common-law conflict of interest. Public policy prohibits public officers from having a direct or indirect pecuniary interest in a contract entered into by the agency served by the officer. See City of Edinburg v. Ellis, 59 S.W.2d 99, holding approved (Tex. Comm'n App. 1933); Meyers v. Walker, 276 S.W.305 (Tex. Civ. App. - Eastland 1925, no writ; Attorney General Opinion H-1309. This policy may even apply to contracts with private, not-for-profit entities established to benefit the work of a state agency. Attorney General Opinion H-1309. Common-law conflict of interest does not affect qualifications for membership on the council; it relates to contracts entered into by governmental entities. The council does not hold the authority to enter into contracts; its role is advisory. Common-law conflict of interest prohibitions therefore do not apply.

S U M M A R Y

Section 6024(a)(2) of Title 42 of the United States Code sets forth certain qualifications for the "consumer" portion of the membership of the Texas Planning Council for Developmental Disabilities which is required by federal law as part of the federal program of financial assistance for state developmental disability programs. Section 6024(a)(2) does not provide for automatic resignation when a member fails to meet its qualifications either at the time of appointment or at any time thereafter. Nor does the section authorize abstention to cure qualification defects.

Section 8 of article 6252-9b, V.T.C.S., provides state officers and employees with general ethical standards of conduct. Section 8 contains no civil or criminal penalties or removal sanctions. The ethical duty imposed by section 8, however, requires compliance.

Common-law conflict of interest prohibits public officers from having a direct or indirect pecuniary interest in a contract entered into by the agency served by the officer. The principle does not affect qualifications for membership on the council. Because the council serves only in an advisory capacity, it does not enter into contracts. Consequently, common-law conflict of interest does not apply to the council.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General