# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

April 22, 1991

Honorable Bruce Gibson
Chairman
Government Organization
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-18

Re: Whether an individual who is an audiologist member of the Board of Examiners in the Fitting and Dispensing of Hearing Aids may be employed by a retail hearing aid company (RQ-2180)

Dear Representative Gibson:

You have requested our opinion as to whether an individual who serves as the audiologist member of the Board of Examiners in the Fitting and Dispensing of Hearing Aids may be employed by a retail hearing aid company. Article 4566-1.02, V.T.C.S., creates the board and provides that its nine members must have the following qualifications:

> (1) Five of such members shall possess the necessary qualifications to fit and dispense hearing aids in this state and have been residents of this state actually engaged in fitting and dispensing hearing aids for at least five years immediately preceding their appointment. No more than two of such five members shall be employed by, franchised by, or associated exclusively with the same hearing aid manufacturer;

> (2) Two Board members must be members of the general public. A person is eligible for appointment as a public member if the person and the person's spouse are not licensed by an occupational regulatory agency in the field of health care; are not employed by and do not participate in the management of a business entity or other organization that provides health-care services or that sells, manufactures, or distributes health-care

supplies or equipment; and do not own, control, or have, directly or indirectly, an interest in a business entity or other organization that provides health-care services or that sells, manufactures, or distributes health-care supplies or equipment;

(3) One of such members shall be a citizen of the United States and a resident of this state for a period of at least two years immediately preceding his appointment, shall be an active practicing physician or surgeon duly licensed to practice in this state by the Texas State Board of Medical Examiners, and specialize in the practice of otolaryngology. Such member shall not have a financial interest in a hearing aid manufacturing company or a wholesale or retail hearing aid company; and

(4) One of such members shall be a citizen of the United States and a resident of this state for a period of at least two years immediately preceding his appointment and shall be an active practicing audiologist. Such member shall not have a financial interest in a hearing aid manufacturing company or a wholesale or retail hearing aid company.

Subsection (a)(4) prohibits the audiologist member from having "a financial interest in a hearing aid manufacturing company or a wholesale or retail hearing aid company." Under the facts you present, the audiologist member is an *employee* of such a company. You ask whether an employee has a "financial interest" in his company for purposes of subsection (a)(4).

Article 4566-1.02 does not define "financial interest." Black's Law Dictionary, however, defines "financial interest" as "an interest equated with money or its equivalent." BLACK'S LAW DICTIONARY 568 (5th ed. 1979). Article 6252-9b, V.T.C.S., defines "substantial interest" in a business entity to include any individual who is an *employee* of the business entity. Another statute, section 171.002 of the Local Government Code, declares that a person has a substantial interest in a business entity if, *inter alia*, "funds received by the person from the business entity exceed 10 percent of the person's gross income." For most "employees," their

income from that employment would ordinarily exceed ten percent of their gross income for a particular year.

Furthermore, this office has long held that mere employment is sufficient to trigger the common law prohibition against conflicts of interest on the part of public officials. Meyers v. Walker, 276 S.W. 305 (Tex. Civ. App.--Eastland 1925, no writ), stands for the proposition that

> [i]f a public official directly or indirectly has a pecuniary interest in a contract, no matter how honest he may be, and although he may not be influenced by the interest, such a contract so made is violative of the spirit and letter of our law, and is against public policy.

276 S.W. at 307.

In Attorney General Opinion H-916 (1976), this office said that a school district official should not contract with a company that employs a member of the district's board of trustees in a managerial capacity, even though the trustee derives no direct financial benefit from the contract. The opinion relied on a series of court decisions from other jurisdictions which had held that mere employment is sufficient to invoke the common law prohibition against conflict of interest. *See, e.g.*, Edward E. Gillen Co. v. City of Milwaukee, 183 N.W. 679, 681 (Wis. 1921); Miller v. City of Martinez, 82 P.2d 519, 523 (Cal. Dist. Ct. App. 1938); Stockton Plumbing & Supply Co. v. Wheeler, 229 P. 1020, 1024 (Cal. Dist. Ct. App. 1924); People *ex rel.* Pearsall v. Sperry, 145 N.E. 344, 345-46 (Ill. 1924).

Likewise, in Attorney General Opinion JM-171 (1984), this office, "[r]elying on Attorney General Opinion H-916," concluded

> that the conflict of interest prohibition is triggered when a member of the governing body of a political subdivision . . . is an officer or *employee* of a firm seeking to do business with that political subdivision. (Emphasis added.)

Finally, in Attorney General Opinion JM-884 (1988), this office said that the common law prohibition against conflict of interest prevents the Texas Commission

for the Deaf from contracting with a local council for the deaf if a commission member serves the local council as a paid *employee* or in a decision-making capacity that authorizes him to contract for the council.

It has been suggested that the term "financial interest" was not meant to include employment, because subsection (a)(2) provides that the lay members of the board may neither be employed by *nor* "own, control, or have, directly or indirectly, an interest in a business entity or other organization that provides health-care services or that sells, manufactures, or distributes health-care supplies or equipment." According to this argument, the statute recognizes a distinction between employment and having an interest in a company, and the failure to include a prohibition against employment in subsection (a)(4) indicates that the legislature did not intend that "financial interest" be construed as encompassing employment.

We disagree with this argument. A more reasonable approach is to view the prohibitions listed in subsection (a)(2) as overlapping rather than discrete. Clearly, some of the specific prohibitions in subsection (a)(2) are also included in the more general ones. We do not believe it can be reasonably argued that employment in a company would not constitute at least an indirect interest in it, but subsection (a)(2) sets out separately its prohibitions against these connections.

Moreover, subsection (a)(2) was drafted at a different time than subsections (a)(3) and (a)(4). Before revision, the statute provided that neither the lay member, the physician, nor the audiologist could have a "financial interest" in a wholesale hearing aid company (the audiologist and physician members could not have a financial interest in a retail hearing aid company either). A 1981 amendment of the statute changed subsection (a)(2) by adding another lay member, broadening the prohibition against industry affiliation by extending it to all health-care related businesses, and specifying various types of forbidden connections. Acts 1981, 67th Leg., ch. 774, at 2903, § 1, eff. Sept. 1, 1981. Subsections (a)(3) and (a)(4) remained the same. The amendment was clearly intended to strengthen the provisions against conflict of interest (a specific conflict of interest provision was also added as section (g)); it would be ironic if the addition of language to accomplish this purpose were used as evidence for allowing additional industry affiliation under subsection (a)(4).

Furthermore, construction of "financial interest" to include employment seems necessary to preserve the legislature's intent in carefully structuring the

composition of the board. The statute lays out a specific structure for the board, balancing the need for expertise in the field against the need for independence from the industry as a whole and impartiality toward individual entities within it. Thus, subsection (a)(1), which presupposes that members within it will be affiliated with the hearing aid industry, provides that no more than two of such members may be employed or associated exclusively with the same hearing aid manufacturer. It could destroy this scheme if members within other sections were also permitted to have such industry ties. In such a scenario, the audiologist member could be affiliated with the same hearing aid manufacturer as two of the subsection (a)(1) members, defeating the purpose of the subsection (a)(1) provision. This cannot have been the intent of the legislature. Rather, the legislature seems to have intended that only subsection (a)(1) members, the fitters and dispensers of hearing aids, who inevitably have ties to the manufacturers and retailers of hearing aids, be industry-affiliated. An audiologist meeting the requirements of subsection (a)(1), and employed by a hearing aid company, may be a member of the board, but only in a subsection (a)(1) position.

On the basis of the prior decisions of this office which construe the term "pecuniary interest" for purposes of common law conflict of interest, as well as what we deem to be the intent of the legislature in enacting article 4566-1.02, we conclude that "financial interest" as used in that statute encompasses employment. As a result, it is our opinion that an individual who serves as the audiologist member of the Board of Examiners in the Fitting and Dispensing of Hearing Aids may not be employed by a hearing aid manufacturing company or a wholesale or retail hearing aid company.

## SUMMARY

An individual who serves as the audiologist member of the
Board of Examiners in the Fitting and Dispensing of Hearing

Aids may not be employed by a hearing aid manufacturing company or a wholesale or retail hearing aid company.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Rick Gilpin & Faith Steinberg
Assistant Attorneys General