

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 12, 1994

Mr. Doyne Bailey
Administrator
Texas Alcoholic Beverage Commission
P.O. Box 13127
Austin, Texas 78711-3127

Opinion No. DM-310

Re: Whether section 5.05(a) of the Texas Alcoholic Beverage Code prohibits a member of the Texas Alcoholic Beverage Commission from investing money through an investment advisory firm, which, using an unrelated broker, may invest the money in corporations that engage in the sale of alcoholic beverages (RQ-555)

Dear Mr. Bailey:

On behalf of the members of the Texas Alcoholic Beverage Commission (the "commission"), you have asked us to interpret section 5.05 of the Alcoholic Beverage Code (the "code"). Section 5.05(a) provides as follows:

> No person may be appointed to or serve on the commission, or hold an office under the commission, or be employed by the commission, who:
>
> (1) has any financial connection with a person engaged in an alcoholic beverage business;
>
> (2) holds stocks or bonds in an alcoholic beverage business; or
>
> (3) has a pecuniary interest in an alcoholic beverage business.

We understand that one of the members has

> placed a sum of money with an investment advisory firm which, through an unrelated broker, makes investments on [the member's] behalf. Stocks are purchased in street name for [the member's] benefit. [The member] exercise[s] no control in the ordinary course over which stocks the investment firm instructs the broker to buy or sell. The firm manages a multi-billion dollar diversified portfolio for thousands of clients. The same stocks are purchased for each client. [The member's] holdings are an infinitesimal percentage of the total

portfolio. The firm does not consult with [the member] about what stocks to buy or sell .... [The member] know[s] about [the] portfolio changes only when [the member] receive[s] an after-the-fact statement regarding [the member's] holdings and their value.

. . . .

The problem is complicated by the fact that hundreds of major corporate conglomerates have, at least arguably, some indirect connection to "the alcoholic beverage business." Pilsbury, for example, owns Steak 'N' Ale restaurants, which serve not only steak but beer. The alcohol sales constitute a minute fraction of Pilsbury's revenues. Pepsi owns Pizza Hut, which serves beer. All commercial airlines hold alcoholic beverage permits.

The legislature codified section 5.05 in 1977. *See* Acts 1977, 65th Leg., ch. 194, § 1, at 397. The legislature intended the codification to be a nonsubstantive adaptation of article 666-5 of the Penal Code[1] (*see id.* § 7, at 558), which, according to the Revisor's Note to section 5.05 of the code, the legislature designed "to prevent conflicts of interest among members, officers, and employees of the commission." This office considered article 666-5 in Attorney General Opinion V-1259 (1951). The opinion stated that in article 666-5 the legislature devised a statutory scheme under which the Liquor Control Board (the predecessor to the commission) was "an independent agency whose actions would not be influenced by a financial interest in the industry over which it exercised jurisdiction." Attorney General Opinion V-1259 at 5.

Indeed, this state has a long-standing policy prohibiting a state officer or employee from having any interest, financial or otherwise, direct or indirect, or from engaging in a business transaction or professional activity that substantially conflicts with the proper discharge of his or her duties in the public interest. 60 TEX. JUR. 3D *Public Officers and Employees* § 144, at 561 (1988). The legislature has enacted several statutes that codify this long-standing policy. *See, e.g.,* Gov't Code § 572.051; Local Gov't Code § 171.003(a); Tax Code § 41.69. The Texas Court of Civil Appeals discussed the policy in *Meyers v. Walker,* 276 S.W. 306 (Tex. Civ. App.--Eastland 1925, no writ). *Meyers* involved city officials who had a pecuniary interest in a contract into which the city

---

[1]Former article 666-5 of the Penal Code, now codified at section 5.05 of the Alcoholic Beverage Code, provided in pertinent part as follows:

> No person shall be eligible for appointment, nor shall hold the office of member of the Board, . . . , who has any connection with any association, firm, person, or corporation engaged in or conducting any alcoholic liquor business of any kind or who holds stocks or bonds therein, or who has pecuniary interest therein.

entered. The court explained the rationale behind a statute codifying the state's long-standing policy as follows:

> Our lawmakers were wise in trying, not only to remove temptation, but to place the public official even above the suspicion of wrongdoing. The idea of keeping the public in the confidence of the official would bring co-operation and loyalty in the administration of government and enforcement of law, and these principles underlie the security of our government.

*Id.* at 307. We recognize that *Meyers* involved a contract between a governmental body and a private corporation and is therefore different from the situation you describe. We believe, however, that the court's discussion of the policy behind a statute prohibiting conflicts of interest is instructive.

Section 1.03 of the code mandates that we liberally construe its provisions to protect the welfare, health, peace, temperance, and safety of the people of the state. On its face, section 5.05 absolutely prohibits a member of the commission from having *any* financial connection with a person engaged in an alcoholic beverage business, holding *any* stocks or bonds in an alcoholic beverage business, or having *any* pecuniary interest in an alcoholic beverage business. In our opinion, section 5.05 thus precludes a commissioner from investing in an "alcoholic beverage business," even if the commissioner accomplishes the investment through an investment advisory firm.

Accordingly, we must determine the meaning the legislature intended to attach to the phrase "alcoholic beverage business" in the context of section 5.05. The code does not define the term, although it defines "alcoholic beverage" as "alcohol, or any beverage containing more than one-half of one percent of alcohol by volume, which is capable of use for beverage purposes, either alone or when diluted." Alco. Bev. Code § 1.04(1). "Business" implies a commercial or mercantile activity. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 190 (1990) (defining "business"); *see also* Gov't Code § 311.011(a) (stating that words used in code shall be construed according to common usage); Alco. Bev. Code § 1.02 (stating that Code Construction Act applies to construction of each provision in code). Thus, an "alcoholic beverage business" is a business involved in the commerce and merchandising of alcoholic beverages. Furthermore, because we must strictly construe the language of the statute (*see Meyers*, 276 S.W. at 306, 307 (stating that statutory provisions concerning state officer's interest generally are construed strictly)), we include within the scope of "alcoholic beverage business" a corporation that engages only incidentally in the commerce and merchandising of alcoholic beverages, such as a corporation whose subsidiary engages in the sale of beer or an airline that sells alcoholic beverages.

We believe this interpretation of the statute is consistent with the state's long-standing policy against conflicts of interest as well as the legislative intent to create, in the

Alcoholic Beverage Commission, "an independent agency whose actions would not be influenced by a financial interest in the industry over which it exercised jurisdiction." *See* Attorney General Opinion V-1259 at 5. If we construed section 5.05 to permit a member of the commission to hold stocks or any other pecuniary interest in a corporation that engages in the sale of alcoholic beverages, even if such sales are conducted by one of the corporation's subsidiaries or if the sales are incidental to the corporation's primary business, the member would be required to pass regulations that may affect the corporation's profits and, ultimately, the return on the commissioner's investment.[2] *See* Attorney General Opinion JM-671 (1987) at 3. Moreover, although the member's interest in the corporation involved in the alcoholic beverage business may be de minimis, the state's rules against conflict of interest have been construed to prohibit small interests.[3] *See id.* (and sources cited therein).

---

[2]We concede that the legislature, when it enacted the statutory predecessor to section 5.05 of the Alcoholic Beverage Code in 1935, probably did not consider investment vehicles such as investment advisory firms. Nor did it probably envision corporations with subsidiaries involved in multiple commercial activities, such as PepsiCo or RJR Nabisco. We feel, however, that the proper solution to the problem you raise is one that the legislature must devise.

[3]We note two provisions in chapter 572 of the Government Code that may be applicable to the situation you posit. *See* Gov't Code §§ 572.058(a) (requiring officer who is member of board or commission having policy direction over state agency publicly to disclose any personal or private interest in measure, proposal, or decision pending before board or commission and to refrain from participating and voting in decision), 572.051(4) (prohibiting state officer from making "personal investments that could reasonably be expected to create a substantial conflict between [his] private interest and the public interest"); *see also id.* § 572.002(12) (defining "state officer" as, among other things, "appointed officer"), (1)(D) (defining "appointed officer" to include member of commission). Section 5.05 of the Alcoholic Beverage Code specifically applies to members of the commission; thus, to the extent of any conflict between section 5.05 of the Alcoholic Beverage Code and the provisions in chapter 572 of the Government Code, section 5.05 controls. *See* 2B SUTHERLAND, STATUTORY CONSTRUCTION § 51.02, at 121 (5th ed. 1992).

# S U M M A R Y

Section 5.05(a) of the Texas Alcoholic Beverage Code prohibits a member of the Texas Alcoholic Beverage Commission from investing money in any corporation that engages in the sale of alcoholic beverages, even if the member makes the investment through an investment advisory firm. Additionally, section 5.05(a) prohibits a member of the Texas Alcoholic Beverage Commission from investing in a corporation whose sole contact with the alcoholic beverage business is through a subsidiary or for which the sale of alcoholic beverages is purely incidental to the corporation's primary business.

Yours very truly,

**DAN MORALES**
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

DREW T. DURHAM
Deputy Attorney General for Criminal Justice

JAVIER AGUILAR
Special Assistant Attorney General

RENEA HICKS
State Solicitor

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General