OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 10, 1999

The Honorable Frank Madla
Chair, Committee on Intergovernmental Relations
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. JC-0018

Re: Whether section 392.043 of the Local Government Code prohibits employees of housing authority from participating in affordable housing program administered by related nonprofit housing corporation (RQ-1210)

Dear Senator Madla:

You ask us to determine whether an employee of a municipal housing authority is barred by a conflict of interest statute from leasing or purchasing a home through a housing program administered by a related nonprofit housing corporation. Chapter 392 of the Local Government Code, the Housing Authorities Law, establishes a housing authority in each Texas city for the purpose of providing safe, clean, and affordable housing to low-income persons. You tell us that the San Antonio Housing Authority ("SAHA" or "the housing authority") has created several nonprofit corporations in order to assist the housing authority in fulfilling the purposes of chapter 392. One of these corporations is the San Antonio Housing Opportunity Corporation ("SAHOC" or "the housing corporation"). "Although created by SAHA," you explain, "SAHOC is an independent corporate entity which carries its own tax identification numbers and tax-exempt corporation designation by the Internal Revenue Service. It has the ability to enter into contracts and can sue and be sued in its own name." Letter from Sen. Frank Madla to Attorney General Dan Morales 2 (Oct. 13, 1998) (on file with Opinion Committee). Your letter generally describes the housing corporation as "separate" from but "related to" the housing authority. *Id.* at 3. We do not consider whether or under what authority a chapter 392 housing authority is permitted to create a housing corporation such as the one you describe.

You say that SAHA and SAHOC have "teamed together" to develop a housing program whereby low-income employees of SAHA may acquire an affordable home through the program by lease/purchase. *Id.* at 2. We must determine whether the program runs afoul of section 392.043 of the Housing Authorities Law, which prohibits employee conflicts of interest, as follows:

> (a) Except as provided by Subsection (b) or (c), an employee of an authority may not have dealings with a housing project for pecuniary gain and may not own, acquire, or control a direct or indirect interest in a:

(1) housing project;

(2) property included or planned to be included in a housing project;

(3) contract or proposed contract for the sale of land to be used for a housing project;

(4) contract or proposed contract for the construction of a housing project; or

(5) contract or proposed contract for the sale of materials or services to be furnished or used in connection with a housing project.

(b) An employee may not have any dealings with a housing project for pecuniary gain except in the performance of duties as an employee of the housing authority.

(c) Except as otherwise permitted by this chapter or another law, an employee of an authority may not be employed by or otherwise contract to provide services to another authority unless the first authority gives its written consent to the employment or contract. An employee of an authority who is employed by or who contracts to provide services to another authority under this subsection does not violate Subsection (a) or (b).

(d) An employee who knowingly or intentionally violates Subsection (a) or (c) commits an offense. An offense under this subsection is a felony of the third degree.

(e) A person finally convicted under Subsection (d) is ineligible for future employment with the state, a political subdivision of the state, or a public corporation formed under the authority of the state or a political subdivision of the state.

Section 392.002 defines a housing project.

(6) "Housing project" means a work or other undertaking to:

(A) demolish, clear, or remove buildings from a slum area, including a work or other undertaking to adapt an area for use as a park, for another recreational or community purpose, or for any other public purpose;

> (B)   provide decent, safe, and sanitary urban or rural housing for persons of low income, including buildings, land, equipment, facilities, and other real or personal property for necessary, convenient, or desirable appurtenances, streets, sewers, water service, and parks, or for other purposes, including site preparation, gardening, administrative, community, health, recreational, educational, or welfare purposes;
>
> (C)   accomplish a combination of the purposes described by Paragraphs (A) and (B); or
>
> (D)   plan buildings and other improvements, acquire property, demolish structures, construct, reconstruct, alter, and repair improvements, and perform other related work.

"Housing project" is defined broadly. On its face, the definition does not limit itself to projects administered by a public housing authority established pursuant to chapter 392. We do not decide the extent to which the conflict-of-interest provisions of chapter 392 apply to various housing projects. Rather, we consider the situation you present, in which the housing project is undertaken by a housing corporation formed and organized at the instigation of a housing authority to carry out the authority's responsibilities. In these circumstances, the conflict-of-interest provisions of chapter 392 apply to the housing projects of the housing corporation the same as to the housing authority.

The employee conflict-of-interest provision of the Housing Authorities Law is consistent with the long-standing policy of this state that no public officer or employee should have any interest, financial or otherwise, direct or indirect, that substantially conflicts with the proper discharge of his or her duties in the public interest. *See City of Edinburg v. Ellis*, 59 S.W.2d 99, 99-100 (Tex. 1933); Tex. Att'y Gen. Op. No. DM-310 (1994) at 2; 60 TEX. JUR. 3D *Public Officers and Employees* § 144, at 561 (1988). This policy is reflected in a number of state laws. *See, e.g.*, TEX. ALCO. BEV. CODE ANN. § 5.05 (Vernon 1995); TEX. LOC. GOV'T CODE ANN. § 320.027 (Vernon 1988). It has been said that laws prohibiting public officers from being interested in public contracts should be "scrupulously enforced." *Ellis*, 59 S.W.2d at 100.

Construing the conflict-of-interest provision of the Housing Authorities Law, we said in Attorney General Opinion JM-610 that a housing authority employee who owns a home included in a housing project owns an interest in that project. Tex. Att'y Gen. Op. No. JM-610 (1986) at 4-5. We have also said that a tenant of a housing project has an interest in the housing project in which the tenant lives. Tex. Att'y Gen. Op. No. M-1096 (1972) at 2-4. Accordingly, we conclude that a housing authority employee who leases or purchases a home included in a housing project has an interest in the housing project.

Thus while section 392.043 bars a housing authority employee from having an interest in a housing project of the housing authority at which he is employed, your question requires us to determine whether a housing authority employee is barred from having an interest in a housing

project administered by a housing corporation that is "separate" from but "related to" the housing authority.

In Letter Opinion No. 97-056, this office considered whether conflict-of-interest provisions applicable to the commissioners of a housing authority applied to members of the boards of directors of the authority's nonprofit subsidiary corporations. Tex. Att'y Gen. LO-97-056, at 2-3. The subsidiary corporations were part of the structure of the housing authority and were established to carry out the purposes of chapter 392. *Id.* The corporations were staffed by housing authority personnel and were managed and operated out of the housing authority's offices. *Id.* Housing authority commissioners automatically served on the board of directors of the housing corporations as part of the commissioners' housing authority duties. *Id.* The corporations acted as public bodies by complying with the Texas Open Meetings Act and other laws applicable to public bodies. *Id.* We concluded, based on these facts, that the conflict-of-interest prohibitions applicable to housing authority commissioners applied equally to the directors of the housing authority's subsidiary corporations. *Id.*

In this case, we have few details about the subsidiary housing corporation and its relationship with the housing authority. You tell us that SAHOC has its own tax identification numbers and federal tax-exempt status designation, and that it has the ability to enter into contracts and sue and be sued in its own name. These facts alone, however, do not establish a separateness between the two entities as a matter of law that might provide a sufficient basis for differentiating the housing project of one from the other. Rather, the entities you describe are "related to" each other; SAHA and SAHOC "teamed together" to create the employee housing program about which you ask. Additionally, you advise that the housing corporation was created by SAHA specifically to enhance SAHA's ability to serve the purposes of chapter 392. On these facts, the housing authority employee conflict-of-interest provision bars SAHA employees from participating in a housing project administered by SAHOC.

You argue in your letter that Letter Opinion No. 97-056 is distinguishable because unlike the commissioners at issue in that opinion, SAHA employees do not make policy decisions and have no discretionary authority over the housing project homes. While housing authority employees may not have the same powers as commissioners, they nevertheless may be in a position to influence or affect the administration of a housing project. For example, employees might recommend housing applications for approval or denial, set rent and purchase prices for homes, or authorize repairs or improvements to homes. Section 392.043 certainly contemplates the existence of such influence by barring employee interests in housing projects. Moreover, public employee conflict-of-interest laws seek to avoid even the appearance of impropriety. *See Meyers v. Walker*, 276 S.W. 305, 307 (Tex. Civ. App.–Eastland 1925, no writ).

You also ask whether SAHA may create a nonprofit subsidiary corporation that is completely separate from SAHA and then transfer homes to the corporation to be leased to and purchased by SAHA employees. Because any analysis would depend heavily upon the facts of any particular arrangement, we cannot assess the various unknowns and determine with any degree of certitude

whether such an arrangement would be barred by section 392.043. Additionally, we hesitate to comment on ways in which the conflict-of-interest statute may be circumvented. We note that public employee conflict-of-interest statutes are strictly construed by the courts and this office. *See Ellis*, 59 S.W.2d at 100; *Meyers*, 276 S.W. at 306, 307. In Attorney General Opinion DM-310, for example, we concluded that a member of the Texas Alcoholic Beverage Commission was prohibited from investing money in any corporation that engages in the sale of alcoholic beverages, even if the member made the investment through an investment advisory firm. Any program devised by SAHA to enable employees to lease and purchase housing project homes will be subject to strict review.

We do not question the merits of the housing authority's policy of employing low-income persons, but we are constrained to follow the law enacted by the legislature. In 1972, this office held that the conflict-of-interest provisions applicable to housing authority commissioners prohibited a housing authority tenant from serving as a commissioner. *See* Tex. Att'y Gen. Op. No. M-1096 (1972) at 2. Recognizing the need of tenants to be involved in the management of their own housing, the legislature amended the statute to expressly authorize, then require, a municipality to appoint a tenant to serve as a housing authority commissioner. *See* COMM. ON URBAN AFFAIRS, BILL ANALYSIS, Tex. H.B. 1547, 73d Leg., R.S. (1993); TEX. LOC. GOV'T CODE ANN. § 392.031(b) (Vernon Supp. 1999) ("A commissioner may be a tenant of a public project over which the housing authority has jurisdiction."); *id.* § 392.0331 ("[A] municipality shall appoint at least one commissioner to a municipal housing authority who is a tenant of a public housing project over which the municipal housing authority has jurisdiction."). It is within the power of the legislature to make a similar change with respect to housing authority employees.

## S U M M A R Y

Chapter 392 of the Local Government Code, the Housing Authorities Law, prohibits an employee of a housing authority from leasing or purchasing a home included in a housing project administered by a related housing corporation.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Barbara Griffin
Assistant Attorney General