**CITY OF FORT WORTH v. STATE ex rel. RIDGLEA VILLAGE.**

No. 14667.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 2, 1945.

Rehearing Denied March 16, 1945.

R. E. Rouer and Heard L. Floore, both of Fort Worth, for appellant.

Marvin H. Brown, Jr., Dist. Atty., of Fort Worth, for appellee State.

J. A. Gooch, Robert C. Pepper, and Burney Braly, all of Fort Worth, for relator Ridglea Village.

McDONALD, Chief Justice.

This suit is in the nature of a quo warranto proceeding, attacking the annexation by the City of Fort Worth of an area described in the case as Ridglea Village.

During 1944 the City of Fort Worth submitted to the qualified voters of Fort Worth several amendments to the city charter, one of which amendments changed the boundaries of the city so as to include the Ridglea area. At about the same time, the Ridglea area was incorporated, under the general laws, as a municipal corporation under the name of Ridglea Village.

We have for decision two questions. The first is whether the annexation proceedings were in conformity with the applicable laws, and the second is whether the annexation proceedings were prior in point of time to the incorporation of Ridglea Village.

It seems not to be disputed that the proceedings to amend the charter were in compliance with the laws governing charter amendments, but the question is whether, in view of Article 1182a, Vernon's Annotated Civil Statutes, Acts 1929, 41st Leg., p. 251, ch. 110, annexation of the territory in question could be effected through the process of amending the charter of the City of Fort Worth. Appellant contends that it was authorized to annex the territory

by amending its charter. Appellee contends that the territory could be annexed only by following the procedure provided in Article 1182a.

It is settled that a city having a population of more than five thousand could, prior to the enactment of Article 1182-a, annex territory by amending the charter of the city, and that in such case it was not required to submit the question of annexation to the inhabitants of the territory proposed to be annexed. Cohen v. City of Houston, Tex.Civ.App., 176 S.W. 809, writ of error refused; Cohen v. City of Houston, Tex.Civ.App., 205 S.W. 757, writ of error refused; Eastham v. Steinhagen, 111 Tex. 597, 243 S.W. 457.

Section 1 of Article 1182a reads as follows: "Whenever the City Commission of any City within this State, acting under and by virtue of any Charter adopted under Home Rule Amendment Article 11, Section 5, of the Constitution of this State, shall initiate or order an election for the extension of the territorial limits of said city, to be submitted to the legally qualified property tax paying voters residing within the territorial limits of said city, to determine whether or not the adjacent territory desired to be annexed shall be included within the territorial limits of said city, said City Commissioners shall at the same time order an election to be held at some convenient place within said city limits, so that the legally qualified property tax paying voters residing in the territory contiguous to said city and proposed to be annexed, may appear and cast their vote for the purpose of determining whether a majority of the legally qualified property tax paying voters residing in said territory proposed to be annexed, favor the annexation of said territory proposed to be annexed."

The full text of the Act, with the caption and emergency clause, is set out in the footnote.[1]

We must determine whether Article 1182a took away from cities of more than five thousand inhabitants the right to annex

---

[1] "Relating to Increase in Territory of Cities of Over 5000 Inhabitants.

"S. B. No. 57.

"Chapter 110.

"An Act to provide for increasing the territorial limits of any city of more than five thousand inhabitants, which has adopted a Charter under Home Rule Amendment, Article 11, Section 5, of the Constitution; providing for annexation of adjacent territory by a majority vote of the qualified voters of the city affected, and of the territory annexed; and providing for the adjustment upon a just and equitable basis of the bonded indebtedness against the territory annexed, provided such territory annexed, has theretofore been included in any Irrigation District or Water Improvement District or Water Control and Improvement District under any of the provisions of the general laws or the Constitution, and carrying at the time such adjacent territory is annexed to said city, bonded indebtedness or flat rates due, to the Irrigation District, Water, Improvement District or Water Control and Improvement District, and providing that this Act shall not repeal or nullify any charter provision of any city of over one hundred Thousand Inhabitants according to the last United States census, operating under Article 11, Section 5 of the Constitution, providing for annexation of territory by ordinance where such territory does not include any irrigation district or water improvement district or water control and improvement district or any part thereof, but shall be construed as additional power and cumulative of said charter provision, and repealing all laws general or special, in conflict herewith and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. Whenever the City Commission of any City within this State, acting under and by virtue of any Charter adopted under Home Rule Amendment Article 11, Section 5, of the Constitution of this State, shall initiate or order an election for the extension of the territorial limits of said city, to be submitted to the legally qualified property tax paying voters residing within the territorial limits of said city, to determine whether or not the adjacent territory desired to be annexed shall be included within the territorial limits of said city, said City Commissioners shall at the same time order an election to be held at some convenient place within said city limits, so that the legally qualified property tax paying voters residing in the territory contiguous to said city and proposed to be annexed, may appear and cast their vote for the purpose of determining whether a majority of the legally qualified property tax paying voters residing in said ter-

territory by charter amendment, which, under the above cited decisions, they theretofore had possessed.

Article 1182a does not expressly repeal any designated statutes, but Section 5 repeals all conflicting laws and parts of laws. Appellant argues that Article 1182a is merely cumulative—that it provides an additional method of annexation, but does not abolish the method of annexation by charter amendment.

From the statements found in 39 Tex.Jur., pp. 130, 131, and the authorities there cited, it appears that there are two

ritory proposed to be annexed, favor the annexation of said territory proposed to be annexed.

"Sec. 2. Whenever an election for the annexation of additional territory is held in accordance with the provisions of the foregoing section, said City Commissioners, when ordering such election for the annexation of said territory, shall prepare for the legally qualified property tax paying voters, printed ballots containing the following propositions to be voted on thereat:

" 'For annexation of additional territory and assumption by the city of all bonded indebtedness and flat rates owing to such water control and improvement district on the territory to be annexed and the levying and collecting of a tax on all property within the city limits sufficient to pay off and discharge said bonded indebtedness and flat rates.'

" 'Against annexation of additional territory and assumption by the city of all bonded indebtedness and flat rates owing to such water control and improvement district on the territory to be annexed and the levying and collecting of a tax on all property within the city limits sufficient to pay off and discharge said bonded indebtedness and flat rates.'

"Sec. 3. If, at any election to be held under the provisions hereof, a majority of the legally qualified tax paying voters residing within the territorial limits of such city, and those residing within the territorial limits proposed to be annexed, shall each vote in favor of the annexation of such additional territory, said city shall thereby assume all of said bonded indebtedness and flat rates on the territory thus annexed and due such Irrigation District, Water Improvement District or Water Control and Improvement District, or either of them, and shall from thence forth out of the taxes collected on the territory thus annexed pay to said Irrigation District, Water Improvement District or Water Control and Improvement District, said bonded indebtedness and flat rates, owing to such district, or either of them, as same become due and payable, and no city thus annexing such territory shall be entitled to collect any taxes due it from the property owners within the territory annexed until said City shall pay such bonded indebtedness and flat rates, for the current year same become due and payable, and present to said property owner a receipt showing that said City has paid the same.

"The order of election must give the metes and bounds of the territory to be annexed, and said metes and bounds shall be include[d] and made a part of the ordinance calling for the election.

"The election herein provided for shall be ordered by the City Commissioners and the returns canvassed and the results declared as is provided by law for other elections pertaining to said City.

"Said ordinance for the election must provide for separate elections and must be issued and public notice given thereof as in other city elections, and provided further that if a majority of the legally qualified property tax paying voters residing within the territorial limits of said city or if a majority of the legally qualified property tax paying voters residing within the territory desired to be annexed shall not be in favor of such annexations then such annexations shall not be made.

"Sec. 4. Provided further, however, that nothing in this Act shall be held or construed to repeal or nullify any charter provision of any city of over one hundred thousand inhabitants according to the last United States census, operating under Article 11, Section 5 of the Constitution providing for the annexation of additional territory by ordinance, but shall be construed as an additional power and cumulative of the said charter provisions.

"Sec. 5. All laws and parts of laws, General and Special, in conflict with this act are hereby repealed.

"Sec. 6. Provided that should any section of this Act be declared unconstitutional it shall not effect any other section, and all other sections shall remain in full force and effect.

"Sec. 7. The fact that there is a great uncertainty as to the method of increasing the territorial limits of cities of five thousand or more, with a Charter under Article 11, Section 5, of the Constitution, and the further fact that in many sections of this State, lands adjacent to

kinds of repeals of statutes, express and implied. Express repeals may be general or special. A general repeal declares, in substance, that all acts and parts of acts in conflict with the new enactment are repealed. A general repealing clause is effective to repeal prior enactments to the extent that they are inconsistent with, or repugnant to, the terms of the later statute. The repealing clause in Article 1182a is general. Is the former rule allowing Home Rule cities to annex territory by charter amendment inconsistent with, or repugnant to, the method of annexation provided by Article 1182a?

The so-called Home Rule amendment of the Constitution, Section 5 of Article 11, Vernon's Ann.St., reads in part as follows: "Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed. by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State; * * *."

■ As declared in the decisions above cited, the power to adopt and to amend charters of this class of cities was by this amendment transferred from the Legislature to the cities themselves, and, it appears from the express language of the amendment, to the qualified voters of the cities. To put it another way, the power to adopt or amend a charter is now vested in the qualified voters of a city, but the method and manner of holding an election for such purpose may be determined by the Legislature.

■ It will be noted that the election provided for in Article 1182a is not to be submitted to the qualified voters, but to the legally qualified property taxpaying voters, a more limited group. It is not to be presumed that the Legislature intended, by the enactment of Article 1182a, to attempt to limit the vote on a charter amendment to the legally qualified property taxpaying voters, in the face of the constitutional provision above quoted, which vested such right in all of the qualified voters of the city. Article 1182a cannot be accepted as evidence of a purpose on the part of the Legislature to require the consent of the inhabitants of the territory to be annexed in all cases of annexation, because it expressly continues in force the right in certain cases to annex territory by ordinance of the city. And the same Legislature, at a called session later held, expressly provided that certain cities might annex territory by the charter amendment method upon vote of the qualified voters of the city. Article 1265, Vernon's Ann.Civ.St., Acts 1929, 41st Leg., 2nd C.S., p. 131, Ch. 63. Clearly there is no general public policy in Texas, either by legislative enactment or by judicial decision, to the effect that territory cannot be annexed without the consent of the inhabitants of such territory. There is nothing in Article 1182a to indicate an intent on the part of the Legislature to establish a new general policy in this respect. When the caption and the emergency clause, as well as the second and third sections, of Article 1182a are examined, it seems reasonable to believe that the chief purpose of the act is to provide a method of equalizing taxes in cases where a city annexes territory lying within a water improvement district, or a district of like nature. When we consider the entire act, together with the caption and the

cities but within the territorial limits of Irrigation Districts, Water Improvement Districts and Water Control and Improvement Districts, are now under heavily bonded indebtedness and flat rates due and owing to Irrigation Districts, Water Improvement Districts and Water Control and Improvement Districts, and there is no method provided by law of relieving said lands of such bonded indebtedness and flat rates, and if said territory is annexed to any city coming within the provisions of this Act, and is taxed for city purposes, the taxes will become of such magnitude and proportion that makes it prohibitive to the owners of such lands, and the further fact that it will be just and equitable in the event that such territory adjacent to any such city is annexed to said city that such taxes due the Irrigation District, Water Improvement District or Water Control and Improvement District, shall be deducted from that of the city taxes, creates an emergency and an imperative public necessity demanding the suspension of the Constitutional Rule requiring bills to be read on three several days in each House of the Legislature and said rule is hereby suspended, and this Act shall take effect from and after its passage, and it is so enacted."

emergency clause, we cannot believe that the Legislature intended by its enactment to abolish the established method of annexing territory by charter amendment. In other words, Article 1182a appears to us to be cumulative rather than exclusive in its operation. It seems to provide a method whereby the city may submit to its property taxpaying voters the question whether the city will annex the territory in question and assume its indebtedness, and for the purpose of paying such indebtedness will levy and collect a tax against all the property within the city limits; and that, where such procedure is followed, the question of annexation and adjustment of taxes must also be submitted to the property taxpaying voters in the territory proposed to be annexed. We do not believe that the Legislature, in providing for the procedure adaptable to this limited kind of situation, intended to do away with the right of a Home Rule city to annex territory by amending its charter upon the vote of all its qualified voters. If the Legislature had intended such a result, we believe that Article 1182a would have contained language more clearly evidencing such a purpose.

Many decisions have been cited in the briefs of the parties, and we have examined them carefully, but none of them involves the precise question we have here.

The other question presented is whether the annexation proceedings of the City of Fort Worth, or the incorporation of Ridglea Village, is prior in point of time. The Fort Worth City Council, on May 24, 1944, pursuant to the requirements of Article 1171 of the Revised Statutes, adopted a resolution announcing the intention of the City, at the expiration of twenty days from the first date of publication of notice of such intention, to call an election submitting certain charter amendments. In the published notice it was set out that one of the amendments would be to extend the boundaries of the City so as to include the area in question. Publication of such notice was begun on the next day, May 25th. The proceedings to incorporate Ridglea Village as a municipal corporation were begun on May 31, 1944.

■■ Appellee argues that the resolution mentioned, as well as the published notice, were insufficient to vest prior jurisdiction in favor of appellant in that the resolution and notice were only to the effect that some of the charter amendments would be submitted to the vote of the people, and that it was not until June 15, 1944, that the Fort Worth City Council passed the ordinance ordering the election. In Binz, State ex rel. v. City of San Antonio, Tex.Civ.App., 147 S.W.2d 551, writ of error refused, it is held that the question of jurisdiction is to be determined by the time of commencement, and not the time of completion, of the proceedings involved. Appellee's argument is that appellant did not, on May 24th, commence its annexation proceedings, but that it only gave notice, in effect, that it might do so at a later date. Since Article 1171 required the notice of intention as a part of the procedure for amending the charter, it seems to us that the resolution providing for the notice, or at least the beginning of publication of the notice, must be regarded as the commencement of the proceedings to amend the charter. We do not regard as controlling the fact that the notice was to the effect that all or a part of the several areas described in the notice would be included in the proposed charter amendments. The most that can be said of this is that the notice left appellant free to submit, or not to submit, some of the proposed charter amendments. As a predicate for submitting the amendments, appellant first had to give notice of the intention to do so. The court in which a suit is first filed will acquire prior jurisdiction, despite the fact that the plaintiff might later dismiss it. To put it another way, the right of the plaintiff to dismiss the suit does not defeat the jurisdiction of the court in which the suit is first filed. So in the case before us the fact that the notice recited that all or a part of the amendments would be submitted to the vote of the people would not alter the date of commencement of the proceedings. The doing of the first thing required by the statutes marks the beginning of the proceedings.

■ From what we have said it follows that we hold, first, that appellant had the right to annex the territory in question by amending its charter, and second, that appellant's proceedings were commenced before the proceedings to incorporate Ridglea Village were commenced.

Judgment of the trial court is reversed, and judgment is here rendered that appellee take nothing by its suit.