## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

May 9, 2003

The Honorable Harvey Hilderbran
Chair, Committee on State Cultural
   and Recreational Resources
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0068

Re: Validity of ethics ordinance provisions proposed for adoption by the City of Seguin (RQ-0626-JC)

Dear Representative Hilderbran:

Your predecessor as Chair of the House Committee on State Recreational Resources asked whether two ethics ordinance provisions proposed by the City of Seguin are legally prohibited. Seguin is a home-rule city with a city manager form of government overseen by a nine-member city council.[1]

## I.     Nonprofit Board Membership

The first proposed provision relates to a city council member's service on the board of a nonprofit organization:

> *Nonprofit board membership.* While membership is encouraged, a councilmember who serves on the board of a public or private nonprofit organization shall have a voice but no vote on any funding request or contract by that organization, unless the organization has a board of directors or trustees appointed in whole or in part by the city council.

Request Letter, *supra* note 1, at 1.

---

[1]Letter from Honorable Edmund Kuempel, Chair, State Recreational Resources Committee, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General, at 1 (Oct. 24, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

Your predecessor asked whether this provision is inconsistent with Local Government Code section 171.009 or Texas common law.[2] *See id.* at 2. He raised no other statute, and we limit our discussion to Local Government Code chapter 171 and the Texas common law that it preempted.

Local Government Code chapter 171 regulates conflicts of interest involving local public officials including members of a home-rule city council. *See* TEX. LOC. GOV'T CODE ANN. ch. 171 (Vernon 1999 & Supp. 2003); *see also id.* § 171.001(1) (Vernon 1999) ("local public official" includes a member of a city's governing body). It preempted the common-law rule that until 1984 barred local governmental bodies from contracting with a business entity in which a member of the governmental body had a personal economic interest. *See id.* § 171.007(a) (Vernon 1999).[3] Contracts that violated this rule were absolutely void. *See Edinburg v. Ellis*, 59 S.W.2d 99 (Tex. Comm'n App. 1933, holding approved); *Delta Elec. Constr. v. City of San Antonio*, 437 S.W.2d 602 (Tex. Civ. App.–San Antonio 1969, writ ref'd n.r.e.); *Meyers v. Walker*, 276 S.W. 305, 307 (Tex. Civ. App.–Eastland 1925, no writ) (holding public contract invalid because a member of the contracting governmental body had a personal economic interest in it). Today, chapter 171 permits a city council and other local governmental bodies to transact business with business entities even though a member of the body has a financial interest in the transaction. It prohibits city council members from participating in the transaction under the circumstances stated in Local Government Code section 171.004:

> (a) If a local public official has a substantial interest in a business entity or in real property, the official shall file, before a vote or decision on any matter involving the business entity or the real property, an affidavit stating the nature and extent of the interest and shall abstain from further participation in the matter if:
>
> > (1) in the case of a substantial interest in a business entity the action on the matter will have a special economic effect on the business entity that is distinguishable from the effect on the public; or
> >
> > (2) [substantial interest in real property] . . . .

TEX. LOC. GOV'T CODE ANN. § 171.004 (Vernon 1999).

Local Government Code section 171.001(2) defines "business entity" as "a sole proprietorship, partnership, firm, corporation, holding company, joint-stock company, receivership, trust, or any other entity recognized by law." *See id.* § 171.001(2). A nonprofit corporation is a

---

[2] Although this office does not construe city ordinances or charter provisions, we make an exception when asked to determine whether such provisions conflict with federal or state law. *See* Tex. Att'y Gen. Op. No. JM-846 (1988) at 1; Tex. Att'y Gen. LO-93-042, at 1.

[3] The predecessor of Local Government Code chapter 171 was adopted in 1983 and became effective on January 1, 1984. *See* Act of May 30, 1984, 68th Leg., R.S., ch. 640, § 8, 1983 Tex. Gen. Laws 4079, 4082.

business entity within this definition. *See* Tex. Att'y Gen. Op. No. JM-424 (1986) at 2; *see also* TEX. LOC. GOV'T CODE ANN. § 171.002 (Vernon 1999) (defining "substantial interest" in a business entity as local public officer's ownership interest in it or income received from it; attributing close relative's substantial interest to officer). An interested officer who knowingly participates in the proceedings when recusal is required commits a Class A misdemeanor. *See* TEX. LOC. GOV'T CODE ANN. § 171.003 (Vernon 1999); *Walk v. State*, 841 S.W.2d 430 (Tex. App. Corpus Christi 1992, writ ref'd) (affirming county judge's conviction for knowing participation in a vote to purchase office supplies from his son-in-law's store). Unlike the common-law rule, a violation under chapter 171 "does not render an action of the governing body voidable unless the measure . . . would not have passed the governing body without the vote of the person who violated the chapter." TEX. LOC. GOV'T CODE ANN. § 171.006 (Vernon 1999).

We turn to Local Government Code section 171.009, which provides as follows: "It shall be lawful for a local public official to serve as a member of the board of directors of private, nonprofit corporations when such officials receive no compensation or other remuneration from the nonprofit corporation or other nonprofit entity." *Id.* § 171.009. The city ordinance does not prohibit, and in fact, encourages city council members to serve as board members of private nonprofit organizations. Thus, the ordinance and section 171.009 are not inconsistent in this respect. Whether the ordinance is consistent with the statute in other respects requires further examination of section 171.009.

Local Government Code section 171.009 was adopted in 1989 as an amendment to chapter 171. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 475, § 2, 1989 Tex. Gen. Laws 1647, 1648. When a statute is amended, the entire statute must be construed as a harmonious whole. *See Schlichting v. Tex. State Bd. of Med. Exam'rs*, 310 S.W.2d 557, 563 (Tex. 1958), *Burlington N. R.R. v. Harvey*, 717 S.W.2d 371, 376 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.). Section 171.009 authorizes a local public official to serve as an uncompensated director of a nonprofit corporation, while the rest of chapter 171 addresses conflicts of interest in the context of local governmental transactions. Although section 171.009 does not expressly address conflicts of interest, prior decisions of this office demonstrate that it is in harmony with the rest of chapter 171. This office has found that common-law rules forbid transactions between a governmental body and a nonprofit corporation when a member of the governmental body serves as a director of the nonprofit corporation. *See* Tex. Att'y Gen. Op. Nos. DM-256 (1993), JM-1006 (1989), JM-884 (1988), MW-39 (1979), H-1309 (1978). Section 171.009 removes this restriction from local governmental bodies. *See* Tex. Att'y Gen. Op. No. DM-256 (1993) at 3 & n.2. A local governmental body may now engage in transactions with a nonprofit corporation even if a member of the local governmental body also serves as an uncompensated director of the nonprofit.

Local Government Code section 171.004 requires recusal "[i]f a local public official has a substantial interest in a business entity or in real property." TEX. LOC. GOV'T CODE ANN. § 171.004(a) (Vernon 1999). An uncompensated director of a nonprofit corporation does not have a "substantial interest" in the nonprofit and thus is not required to comply with section 171.004. *See* Tex. Att'y Gen. Op. No. JM-1006 (1989) at 3. Local Government Code section 171.003(a), the criminal penalty provision, applies if a local public official "knowingly . . . violates Section

171.004." TEX. LOC. GOV'T CODE ANN. § 171.003(a) (Vernon 1999). Absent a substantial interest in a business entity or real property, an individual cannot commit the offense defined in section 171.003(a). Service as an uncompensated director of a nonprofit corporation does not require a local public official to recuse himself or herself from participation in a transaction with the nonprofit.

Unlike chapter 171, the proposed ordinance prohibits a city council member from voting on funding requests or contracts with a private, nonprofit corporation that the council member serves as director. We consider whether the City of Seguin may adopt this restriction.

Because Seguin is a home-rule city, it derives its legislative authority directly from the Texas Constitution and may adopt any ordinance not inconsistent with the constitution or statute. See TEX. CONST. art. XI, § 5; Lower Colo. River Auth. v. City of San Marcos, 523 S.W.2d 641, 643 (Tex. 1975). Moreover, chapter 171 "is cumulative of municipal charter provisions and municipal ordinances defining and prohibiting conflicts of interests." TEX. LOC. GOV'T CODE ANN. § 171.007(b) (Vernon 1999). Chapter 171 accordingly does not abrogate a municipality's authority to adopt provisions regulating conflicts of interests involving its officers. See Turner v. City of Beaumont, 197 S.W.2d 114, 116 (Tex. Civ. App.–Beaumont 1946, writ ref'd n.r.e.), City of Fort Worth v. State ex rel. Ridglea Vill., 186 S.W.2d 323, 328 (Tex. Civ. App.–Fort Worth 1945, writ ref'd w.o.m.) (annexation statute is cumulative of and does not supersede home-rule city authority to annex territory pursuant to charter provisions). The City of Seguin may regulate conflicts of interest involving city council members by adopting ordinance provisions that are not inconsistent with Local Government Code chapter 171. Thus, the city may not attempt to exempt its officers from requirements imposed by Local Government Code chapter 171. See generally Young v. City of Seagoville, 421 S.W.2d 485, 486 (Tex. Civ. App.–Dallas 1967, no writ) (city could not authorize operation of pool hall by ordinance when state statute prohibited operation of pool halls). We conclude that the Seguin ordinance may add to the restraints imposed by chapter 171 by prohibiting a city council member from voting on funding requests or contracts with a private, nonprofit corporation the council member serves as director. See generally In re Sanchez, 81 S.W.3d 794 (Tex. 2002) (construing statutory authority of home-rule city to prescribe requirements for candidate's application for a place on the ballot). Thus, to the extent the proposed ordinance addresses a city council member's service with a private nonprofit corporation, it is not inconsistent with Local Government Code section 171.009.

The proposed ordinance also applies to a council member's service as director of a public nonprofit corporation. It is thus broader than section 171.009, which addresses only service as director of a private nonprofit corporation. Statutes other than Local Government Code chapter 171 may be relevant to specific public nonprofit corporations. The legislature has created and authorized the creation of public nonprofit corporations to provide governmental services. See, e.g., TEX. EDUC. CODE ANN. § 57.11(a) (Vernon Supp. 2003) (Guaranteed Student Loan Corporation); TEX. LOC. GOV'T CODE ANN. § 394.003(8) (Vernon Supp. 2003) (housing finance corporation); TEX. TRANSP. CODE ANN. ch. 431, subch. D (Vernon 1999 & Supp. 2003) (creation of local government corporation to aid local government to accomplish governmental purpose); TEX. UTIL. CODE ANN. § 251.052 (Vernon Supp. 2003) (Texas Underground Facility Notification Corporation). Because a statute other than chapter 171 or a city ordinance may apply to a particular public nonprofit corporation, we cannot determine as a matter of law whether this part of the proposed ordinance is valid.

The proposed ordinance also allows a city council member to vote on a transaction when the nonprofit organization "has a board of directors or trustees appointed in whole or in part by the city council." Request Letter, *supra* note 1, at 1. Statutes other than Local Government Code chapter 171 may be relevant to these boards. Moreover, some of these entities may function as administrative units of the city and not be separate entities for purposes of chapter 171. Whether a city council member may vote on a funding request from a public nonprofit organization or any nonprofit with "a board of directors or trustees appointed in whole or in part by the city council" must be determined on a case-by-case basis in light of the relevant statutes and any city ordinances applicable to the entity.

## II.     Political Activity of City Council Members

Your predecessor also asked whether the following proposed restriction on the political activities of city council members would violate any constitutional right of free speech or association:

> *Political activity.*
>
> 1) *General rule.* Current members of city council who are seeking reelection may engage in any campaign activity on behalf of their own campaign efforts. However, councilmembers are prohibited from taking part in the management, affairs, or political campaign of any other municipal candidate. The following activities are the only activities that councilmembers may engage in on behalf of a municipal candidate:
>
> > ● The placement of campaign signs on premises owned by the councilmember.
> >
> > ● The placement of bumper stickers on personal vehicles.
> >
> > ● Attendance at a political rally or function for a city council candidate, so long as the councilmember does not actively participate in the rally or function.
> >
> > ● The donation of a political contribution that does not exceed the statutory limit for nonreportable contributions.[4]

Request Letter, *supra* note 1, at 1-2. The rights of free speech and association are protected by the First and Fourteenth Amendments of the United States Constitution and by Texas Constitution article I, sections 3 and 27. *See* U.S. CONST. amends. I, XIV; TEX. CONST. art. I, §§ 3, 27.

---

[4]A candidate must file a sworn statement giving the name and address of each person who contributed more than $50. *See* TEX. ELEC. CODE ANN. § 254.031(a)(1) (Vernon Supp. 2003).

Representative Kuempel's letter notes that the provision closely tracks the language of the federal Hatch Act, 5 U.S.C. §§ 1501-08 (2000), which limits the political activity of certain federal employees and also state and local employees whose principal employment is in connection with an activity financed by federal loans or grants. *See* Request Letter, *supra* note 1, at 2; *see also* 5 U.S.C. §§ 1501(4), 1502 (2000) (state and local employees), 5 U.S.C. §§ 7322, 7324 (2000) (restrictions on federal employees).[5] The Hatch Act provisions and state laws restricting partisan political activity by federal and state employees and appointees have been upheld by federal courts and by the Attorney General of Texas. *See Broadrick v. Oklahoma*, 413 U.S. 601 (1973) (state statute limiting political activity by state employees), *United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 565 (1973) (Hatch Act restrictions on federal civil service employees), *Wachsman v. City of Dallas*, 704 F.2d 160, 161 (5th Cir. 1983) (city charter provisions limiting political activity of city employees); Tex. Att'y Gen. Op. Nos. DM-408 (1996) (restriction on political activity of appointed state officer), MW-243 (1980) (restrictions on political activity of Department of Public Safety personnel), MW-149 (1980) (same). The courts have held that the Hatch Act and similar state restrictions on a public employee's political activity do not violate an employee's rights of free speech under the United States Constitution if the restriction serves a legitimate government interest. *See Broadrick*, 413 U.S. at 615; *see also Letter Carriers*, 413 U.S. at 555 (federal service should depend upon meritorious performance not political service, and political influence of federal employees on others and on the electoral process should be limited). Restrictions on public employees' political activities have been upheld when they served the interests of efficient government, a government that enjoys public confidence, the right of individual citizens to be free of governmental discrimination based on their political activities or connections, and the right of governmental employees to be free of employer pressure in their personal political decisions. *See Wachsman*, 704 F.2d at 166.

While cases under the Hatch Act and similar state statutes address restrictions against the political activities of public employees, the proposed ordinance provision restricts the political activity of elected city council members concerning the candidacy of other persons for municipal office. *See* Request Letter, *supra* note 1, at 2. It is argued that the provision inhibits constitutionally protected rights of free speech and association, calling for strict scrutiny.[6] Campaign debate about the qualifications of candidates is a core First Amendment value. *See Republican Party of Minn. v. White*, 536 U.S. 765, 773 (2002) (speech of judicial candidate), *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 222-23 (1989) (speech by political party about candidates). The First Amendment right of association is also given its highest protection in the context of elections. *See Eu*, 489 U.S. at 224-25. Moreover, the First Amendment protects the voters' right to inform themselves about candidates' qualifications. *See id.* Accordingly, the United States Supreme Court recently held that a restriction barring state judicial candidates from announcing their

---

[5]*See also* Memo from Angela Dickerson-Nickel, Seguin City Attorney, to City Councilmembers (July 12, 2002) attachment to Letter from Angela Dickerson-Nickel, Seguin City Attorney, to Opinion Committee, Office of Attorney General of Texas (Mar. 3, 2003) (on file with Opinion Committee) [hereinafter Dickerson-Nickel Memo].

[6]*See* Memo from W. David Friesenhahn, Friesenhahn Law Firm, to Mary Louise Gonzales & Bruno Martinez (July 19, 2002) attachment to Letter from Angela Dickerson-Nickel, Seguin City Attorney, to Opinion Committee, Office of Attorney General of Texas (Mar. 3, 2003) (on file with Opinion Committee).

views on disputed legal or political issues violated the candidate's First Amendment right of speech, absent a showing of a compelling state interest for the infringement. *See Republican Party of Minn.*, 536 U.S. at 774-75. The proposed restriction on a city council member's political activity with respect to candidates for municipal office encroaches on the council member's First Amendment rights of speech and association. It also encroaches on the candidate's right of association because it prevents him or her from seeking and receiving a city council member's active participation in the campaign. *See generally Eu,* 489 U.S. at 224-25 (burdens on freedom of association). It keeps the voters from knowing the opinions of current city council members about candidates for city office, information that might help the voters evaluate the potential impact on city government of the choice in their choice of a candidate.

We therefore conclude that the proposed restriction on city council members' political activity is subject to strict scrutiny. The city has the burden of showing that the restriction is (1) narrowly tailored to serve (2) a compelling state interest. *See Republican Party of Minn.*, 536 U.S. at 775, *Eu,* 489 U.S. at 222.

The city attorney argues that two factors support the constitutionality of the proposed restrictions on city council members' political speech:

> First, they are narrow in scope and exclude most everyday forms of political expression . . . . Second, the policy statement at the beginning of the ordinance specifically enumerates the goals of making sure that "public officers and employees be independent, impartial and responsible only to the people of the city" and that "the city council be maintained at all times as a nonpartisan body."

Dickerson-Nickel Memo, *supra* note 5, at 2 (citations omitted).

The city provides no explanation of how the restrictions achieve the purported goals of ensuring that "the city council be maintained at all times as a nonpartisan body" or that "public officers and employees be independent, impartial, and responsible only to the people of the city." *Id.* (quoting from policy statement of proposed ordinance). It is very possible that these goals may be achieved even with unfettered free speech by council members. Moreover, the city attorney does not explain the need for restrictions on partisanship in addition to those stated in the Election Code. *See* TEX. ELEC. CODE ANN. §§ 143.002 (Vernon 1986) (name of candidate for city office may appear on ballot only as an independent, subject to exception for home-rule city), 143.003 (home-rule city charter may authorize nominations by political organizations for partisan candidates for city offices). Nor does the city attorney address how the restrictions achieve the enumerated goals or show that the goals are compelling interests that support a ban on core First Amendment speech. *See generally Republican Party of Minn.*, 536 U.S. at 778 (interest in preserving the judiciary's impartiality and its appearance of impartiality was not a compelling interest justifying prohibition on candidate for judicial office from announcing views on disputed legal or political issues). Absent a showing that a proposed restriction on a city council member's First Amendment right to engage in speech about candidacies for city office is narrowly drawn and that it is supported by a compelling interest, a court will not hold it constitutional.

## S U M M A R Y

Pursuant to Local Government Code section 171.009, a city council may transact business with a nonprofit corporation on which a local public official serves as an uncompensated director, and the director is not required to follow the recusal procedures in section 171.004. Local Government Code chapter 171, which pertains to conflicts of interest of local public officials, is cumulative of municipal charter provisions and municipal ordinances defining and prohibiting conflicts of interests. A home-rule city may adopt an ordinance regulating conflicts of interest of its officials that is not inconsistent with Local Government Code chapter 171.

A home-rule city ordinance that bars a city council member from taking part in the management, affairs, or political campaign of any municipal candidacy aside from his or her own candidacy limits a public officer's speech about the qualifications of candidates for public office and thus burdens core First Amendment rights. It is subject to strict scrutiny, and its constitutionality depends on whether it is narrowly tailored to serve a compelling state interest.

Very truly yours,

GREG ABBOTT
Attorney General of Texas


BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee