

**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

May 28, 2024

The Honorable Glenn Hegar
Texas Comptroller of Public Accounts
Post Office Box 13528
Austin, Texas 78711-3528

**Opinion No. KP-0466**

Re: Application of conflict-of-interest rules to grants awarded by the Texas Opioid Abatement Fund Council (RQ-0533-KP)

Dear Mr. Hegar:

You ask about the application of specific conflict-of-interest rules to grants awarded by the Texas Opioid Abatement Fund Council ("Council"), and we limit our discussion to the provisions you raise.[1] You explain that the Opioid Abatement Settlement Fund ("Fund") originated from settlement agreements related to litigation involving the manufacture and distribution of opioids.[2] Request Letter at 1. You tell us the Council was created to "distribute funds to communities to provide relief for those affected by the opioid crisis." *Id.* You state the Council members come from industries or professions with experience with opioid-related harms as well as from specific regions of the State. *Id.* at 1–2. You explain that "[t]he Council is required to have members with specific types of experience, who are affiliated with the same entities that would otherwise be eligible for the grants." *Id.* at 2. Noting the strict legal requirements related to conflicts of interest, you state that "[i]f every qualified, otherwise eligible entity with any tie to a Council member would lose the ability to remediate opioid harms because of the member's service on the Council,

---

[1]*See* Letter from Honorable Glenn Hegar, Tex. Comptroller of Pub. Accts., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Feb. 29, 2024), https://texasattorneygeneral.gov/sites/default/files/request-files/request/2024/RQ0533KP.pdf ("Request Letter"). For instance, you do not expressly inquire about Penal Code section 36.08, nor do you inquire about the Council's Code of Ethics rule. *See id.* at 1–7. We presume you have considered these provisions independently, so we do not address them here.

[2]According to a webpage for the Council, the "state of Texas has participated in settlement agreements with different companies to resolve legal claims against them for their role in the opioid crisis." https://comptroller.texas.gov/programs/opioid-council/settlements/.

Moneys received in connection with the various settlement agreements (collectively "settlement agreements") are distributed pursuant to these agreements and subchapter R, chapter 403, Government Code. *See, e.g.*, TEX. COMPTROLLER OF PUB. ACCTS., *Teva Texas State-Wide Opioid Settlement and Consent Judgement* (Exhibit A, Opioid Abatement Fund (Texas) Settlement) at 2 (Feb. 4, 2022), https://comptroller.texas.gov/programs/opioid-council/docs/teva-tx-state-wide-opioid-settlement.pdf ("Texas Term Sheet").

many of the current members could resign, and filling those positions could cause a significant delay in saving lives." *Id.*

**The Council**

The Texas Opioid Abatement Fund Council and Settlement Allocation Term Sheet (the "Texas Term Sheet") executed on May 13, 2020, by the State of Texas and its political subdivisions, addressed the allocation of settlement proceeds for negotiated resolutions of claims of the State of Texas and its political subdivisions against manufacturers, marketers, promoters, distributers, and dispensers of opioids and opioid products. *See supra* note 2. In May of 2021, the Texas Legislature passed Senate Bill 1827, codified at chapter 403 of the Texas Government Code, subchapter R, to govern Statewide Opioid Settlement Agreements. *See* TEX. GOV'T CODE §§ 403.501–.511. Subchapter R incorporated elements of the Texas Term Sheet and establishes the Council to "ensure that money recovered by this state through a statewide opioid settlement agreement is allocated fairly and spent to remediate the opioid crisis in this state by using efficient and cost-effective methods that are directed to regions of this state experiencing opioid-related harms." *Id.* § 403.503(a). Subchapter R requires that the Council have thirteen appointed members who represent various regions of the State experiencing opioid-related harm and various professions and industries experienced dealing with opioid-related harm, along with the Comptroller or his or her designee as a nonvoting presiding officer. *See id.* § 403.503(b) (providing for composition and appointment structure of the Council). The Council is administratively attached to the Office of the Texas Comptroller of Public Accounts ("Comptroller's Office"), which is to provide staff and facilities to the Council. *Id.* § 403.503(e).

As a general matter, subchapter R creates an Account and a Fund related to opioid abatement settlements and provides for the allocation of the funds. *See id.* §§ 403.501(1) (defining "Account"), (3) (defining "Fund"), 403.505 (providing for the Opioid Abatement Account), 403.506 (providing for the Opioid Abatement Trust Fund). The subchapter directs the deposit and allocation of the opioid settlement agreement money in accordance with the subchapter, the settlement agreements, and any applicable bankruptcy plan and specifies the respective duties of the Council and the Texas Treasury Safekeeping Trust Company.[3] *See id.* § 403.507; *see also id.* §§ 403.501(6) (defining "[t]rust company" to mean the Texas Treasury Safekeeping Trust Company), 404.101–.116 (providing for the Texas Treasury Safekeeping Trust Company). Among other things, the Council determines and approves the strategy for allocating the money under its purview, develops a grant application and award process, and reviews grant agreements to ensure recipients comply with the terms of such agreements. *Id.* § 403.509(a). The scenario about which you are concerned is perhaps best exemplified with the example of hospital districts. Subchapter R requires that two members of the Council be employees of a hospital district. *See id.* § 403.503(b)(3), (4). At the same time, subchapter R requires that 15% of the opioid abatement money allocated to the Council be allocated to hospital districts. *Id.* § 403.508(a)(2). As a practical matter, the number of hospital district employees willing to serve on the Council would be reduced

---

[3]Subchapter R provides that "[o]f the money allocated to the council under Section 403.506(c)(2), the council shall allocate: (1) one percent to the comptroller for the administration of the council and this subchapter; (2) 15 percent to hospital districts; and (3) the remaining money based on the opioid abatement strategy developed by the council under Section 403.509." TEX. GOV'T CODE § 403.508(a).

if their serving on the Council disqualifies the hospital district from receiving any opioid abatement funds.

**Government Code section 572.058 applies to grants awarded by the Texas Opioid Abatement Fund Council.**

We begin with Government Code chapter 572, which establishes standards of conduct and conflict-of-interest requirements for state officers and employees. *See generally id.* §§ 572.001–.069. You specifically mention section 572.058, which provides that

> [a]n elected or appointed officer, other than an officer subject to impeachment under Article XV, Section 2, of the Texas Constitution,[4] who is a member of a board or commission having policy direction over a state agency and who has a personal or private interest in a measure, proposal, or decision pending before the board or commission shall publicly disclose the fact to the board or commission in a meeting called and held in compliance with Chapter 551. The officer may not vote or otherwise participate in the decision. The disclosure shall be entered in the minutes of the meeting.

*Id.* § 572.058(a) (footnote added); *see also id.* § 572.058(b) (providing that an individual violating this provision is subject to removal from office); Request Letter at 3. Subsection 572.058(f) provides that the phrase "personal or private interest" has the same meaning as it has under Texas Constitution, article III, section 22.[5] TEX. GOV'T CODE § 572.058(f); *see* TEX. CONST. art. III, § 22 ("A member who has a personal or private interest in any measure or bill, proposed, or pending before the Legislature, shall disclose the fact to the House, of which he is a member, and shall not vote thereon.").

Under its plain text, the application of subsection 572.058(a) to a person depends on whether the person is: (1) an elected or appointed officer; and (2) a member of a board or commission with policy direction over a state agency. TEX. GOV'T CODE § 572.058(a). We parse that language in turn. We first note that the Comptroller is an elected official subject to impeachment under Texas Constitution article XV, section 2 and is thereby excluded from the

---

[4]Article XV, section 2 lists the Governor, Lieutenant Governor, Attorney General, Commissioner of the General Land Office, Comptroller, and certain judges. TEX. CONST. art. XV, § 2.

[5]The courts have not determined the full scope of the phrase "personal or private interest." *See* Tex. Att'y Gen. Op. No. GA-0087 (2003) at 2; *see also* Tex. Ethics Comm'n Op. No. 298 (1996) ("The scope of this term has not been clearly defined under either the constitutional provision or the Government Code section."); *but see Off. of Pub. Util. Couns. v. Pub. Util. Comm'n*, 185 S.W.3d 555, 573–74 n.28 (Tex. App.—Austin 2006, pet. denied) (considering a previous employment relationship in the context of conflict-of-interest provisions, including section 572.058).

application of subsection 572.058(a).[6] *See supra* note 4; TEX. GOV'T CODE § 572.058(a). So, we consider the other members of the Council to determine whether they are "appointed officers" under chapter 572.

In relevant part, subsection 572.002(1)(C) defines "[a]ppointed officer" to mean "an officer of a state agency who is appointed for a term of office specified by the Texas Constitution or a statute of this state[.]" TEX. GOV'T CODE § 572.002(1)(C). As previously noted, all voting members of the Council are appointed to their positions. *See id.* § 403.503(b); *see also id.* § 403.503(b)(6) (providing that the Comptroller is a nonvoting member and serves as the presiding officer). While chapter 403 does not provide for a term of office for Council members, the Texas Constitution does by default. Article XVI, section 30 provides that the "duration of all offices not fixed by this Constitution shall never exceed two years." TEX. CONST. art. XVI, § 30(a). Accordingly, a court would likely conclude that a voting member of the Council is an appointed officer under subsection 572.058(a).

The application of subsection 572.058(a) also depends on whether the entity is a "board or commission having policy direction over a state agency . . . ." TEX. GOV'T CODE § 572.058(a). So we consider whether the Council satisfies all aspects of this language, addressing the state agency aspect first. For its purposes, chapter 572 defines "[s]tate agency" to mean "a department, commission, board, office, or other agency that: (i) is in the executive branch of state government; (ii) has authority that is not limited to a geographical portion of the state; and (iii) was created by the Texas Constitution or a statute of the state[.]" *Id.* § 572.002(10)(A). While the body you ask about is called a council and not a board or commission, it is nonetheless the decision-making body in relation to the allocation of certain opioid settlement funds. *See id.* § 403.509 (describing the Council's powers to include decision making authority with respect to allocation of certain opioid settlement funds); *see also* NEW OXFORD AMERICAN DICTIONARY 394 (3d ed. 2010) (defining "council" to mean "an advisory, deliberative, or legislative body of people formally constituted and meeting regularly"). A court is likely to decide the question of subsection 572.058(a)'s application based on an entity's function rather than solely on its name. Additionally, the Council is administratively attached to the Comptroller's Office in the executive branch. TEX. GOV'T CODE § 403.503(e); *see also* Tex. Att'y Gen. Op. No. GA-0611 (2008) at 5 (noting a particular committee's "placement in the Government Code and its operation under the Comptroller" likely makes it part of the executive branch of government). The Council's authority to allocate funds is not limited to a geographical portion of the state. *See* TEX. GOV'T CODE §§ 403.508 (directing the Council to allocate a certain percentage of money to hospital districts without regard to location), 403.509(b) (authorizing the Council to reallocate money between geographic regions). The Council was created by Government Code chapter 403, a Texas statute.

---

[6]Absent application of subsection 572.058(a), the Comptroller would be subject to the common-law rule found in *Meyers v. Walker*. 276 S.W. 305, 307 (Tex. App.—Eastland 1925, no writ) (applying to a public official directly or indirectly having a pecuniary interest in a contract); *see infra* at 5–6. Where one member of the governmental body has a pecuniary interest in a contract, the common law precludes the governmental body from making the contract. *See* Tex. Att'y Gen. Op. No. JC-0484 (2002) at 5, 6. In this instance, however, the Comptroller would not have a pecuniary interest in an entity potentially receiving a grant from the Council and has no conflict-of-interest under the common law. Thus, we need only consider the application of section 572.058 with respect to the other, appointed members of the Council.

*See generally id.* §§ 403.501–.511. Accordingly, a court would likely conclude that the Council satisfies the definition of "state agency" for purposes of subsection 572.058(a).[7]

We next consider whether the Council has policy direction. *See id.* § 572.058(a). Among its other obligations under various settlement agreements, court orders, or the Texas Term Sheet, the Council is charged with, for example, determining and approving opioid abatement strategies, reviewing and approving grant applications, and allocating abatement settlement funds. *Id.* § 403.509; *see also id.* § 403.501 (defining "Council" with respect to its function of managing the distribution of money allocated from the Fund). A court would likely conclude that such authority constitutes policy direction with respect to the key purpose of the Council—the allocation of certain opioid abatement Fund moneys. The Council is therefore likely considered a board or commission having policy direction over the Opioid Abatement Fund. Accordingly, a court is likely to conclude that the Council members are appointed officers and that they exercise policy direction as members of a state agency for purposes of section 572.058.

### Application of the common-law ethics rule from *Meyers v. Walker*

Yet, this office has long concluded that the application of section 572.058 is limited to an agency's primary functions of "rule making and the application of the statute and rules to individual cases." Tex. Att'y Gen. Op. No. JM-671 (1987) at 5 (discussing the predecessor statute to section 572.058). Accordingly, contracts—presumably including those awarding grants—were considered to fall outside the scope of this statutory conflict-of-interest provision. *See id.*[8] Instead, this office determined that the governing law for conflicts of interest arising in the context of contracts and other agreements is based on the Texas Court of Appeals decision of *Meyers v. Walker*. *See id.* at 6–8. *Meyers* recites a strict rule prohibiting a public officer from having any personal financial interest in a contract entered into by the governmental body of which he is a member, as follows:

---

[7]Our conclusion here is limited to a consideration of subsection 572.058(a) and is not authority for the proposition that the Council is a state agency for all purposes.

[8]You ask only about the applicability of certain statutory conflict-of-interest provisions to grant awards. We note that most, if not all, grant awards of government funding would implicate an underlying contract, and it inherently a contractual relationship. That said, we recognize that distinctions between contracts and grant awards exist at law. For example, Government Code chapter 783 provides that "[t]he office of the comptroller is the state agency for uniform grant and contract management," and your office has accordingly disseminated the Texas Grant Management Standards. TEX. GOV'T CODE § 783.004; *see* TEX. COMPTROLLER OF PUB. ACCTS., *Texas Grant Management Standards* (Dec. 2021), https://comptroller.texas.gov/purchasing/grant-management/ ("Guide"). That document in turn distinguishes in some cases between grant awards and contracts. *See* Guide at 4 (stating that "[i]n the administration of state and federal grant programs, the terms 'grant' and 'contract' are not synonymous" and that for purposes of the Texas Grant Management Standards, "the term 'contract' refers to the legal instrument used to enter into a procurement relationship with a contractor to acquire goods and services to carry out the project or program under a state or federal grant"). That said, you do not suggest, and we do not find any authority suggesting, that the statutory conflict-of-interest provisions about which you inquire are inapplicable on the basis that the Council will award grants. *See id.* at 7 (noting applicability of Government Code chapter 571's conflict-of-interest provisions); *see also* TEX. GOV'T CODE § 2261.002(1) (defining "[c]ontract" to include "a grant . . . under which the recipient of the grant is required to perform a specific act or service, supply a specific type of product, or both"). Accordingly, we consider the applicability of the statutory provisions you ask about without reference to any legal distinctions between a "grant" and a "contract" not apparent within those statutes.

> If a public official directly or indirectly has a pecuniary interest in a contract, no matter how honest he may be, and although he may not be influenced by the interest, such a contract so made is violative of the spirit and the letter of our law, and is against public policy.

*Meyers*, 276 S.W. at 307. Upon finding the *Meyers* standard applicable, JM-671 relied on a later court of appeals decision to note that the "conflict of interest cannot be cured by the interested officer's recusing himself." Tex. Att'y Gen. Op. No. JM-671 (1987) at 3 (citing *Delta Elec. Constr. Co. v. City of San Antonio*, 437 S.W.2d 602, 609 (Tex. App.—San Antonio 1969, writ ref'd n.r.e.)). This office determined that a contract would be void if entered into when a member of the governmental body had a pecuniary interest. Tex. Att'y Gen. Op. No. JC-0484 (2002) at 4 (concluding that "a grant from the [Texas Council on Environmental Technology] represents a contractual relationship that is not subject to section 572.058, even if a formal contract is not executed"). A contract entered into when a member of the governmental body had a pecuniary interest would be void as a matter of law. *Id.* at 5, 6.

At the time JM-671 was decided, the requirement in section 572.058 was located in Texas Revised Civil Statutes article 6252-9b, section 6. *See* Act of May 28, 1973, 63d Leg., R.S., ch. 421, § 1, 1973 Tex. Gen. Laws 1086, 1093. This statutory predecessor to section 572.058 became effective January 1, 1974. *Id.* at 1095. Although article 6252-9b, section 6 was enacted years after *Meyers v. Walker*, JM-671 rejected an argument that its passage abrogated the *Meyers v. Walker* rule. *See* Tex. Att'y Gen. Op. No. JM-671 (1987) at 6–7, 8 ("In our opinion, article 6252-9b,[9] V.T.C.S., did not modify the common law conflict of interest rule stated in *Meyers v. Walker*." (footnote added)). Noting the statute's lack of express language pertaining to contracts when analyzed against a comparable provision in another statute, JM-671 relied primarily on legislative history to reach this result. *Id.* at 6–7.

### Reconsideration of Opinion JM-671

Since the issuance of JM-671, this office has relied on the *Meyers v. Walker* framework in many opinions. *See, e.g.*, Tex. Att'y Gen. Op. Nos. KP-0259 (2019), GA-0351 (2005), JC-0484 (2002), DM-310 (1994). Yet, we have not seriously re-examined or reconsidered the basis of its analysis or conclusion. Your question provides us the opportunity to do so now. For the reasons discussed below, we believe that, today, a court considering whether section 572.058 applies to contracts, including grant awards, would likely come to a different conclusion than JM-671.

---

[9]*See* Act of April 30, 1993, 73d Leg., R.S., ch. 268, §§ 1, 46, 1993 Tex. Gen. Laws 583, 583, 986 (adopting nonsubstantive revisions of certain statutes relating to state and local government and repealing certain statutes including article 6252-9b)); *see also* Tex. Att'y Gen. Op. No. GA-0351 (2005) at 3 (recognizing Revised Civil Statutes article 6252-9b, section 6, as statutory predecessor to Government Code subsection 572.058(a)).

1. **JM-671 relied on the distinction between section 572.058 and language from a separate conflict-of-interest statute relating to local governmental officials.**

When JM-671 was issued in 1987, the disclosure and recusal provisions of subsection 572.058(a) existed in a predecessor statute. *See* Tex. Att'y Gen. Op. No. JM-671 (1987) at 6 (referring to subsection 6(a), article 6252-9b, Texas Civil Statutes); *see also* Act of May 28, 1973, 63d Leg., R.S., ch. 421, § 1, 1973 Tex. Gen. Laws 1086, 1093.

In rejecting the argument that the predecessor statute nullified the common-law rule, JM-671 looked to an analog statute governing conflicts of interest for local government officials. Tex. Att'y Gen. Op. No. JM-671 (1987) at 5–6 (referring to subsection (3)(a)(1), article 988b, Texas Civil Statutes); *see also* Act of May 28, 1983, 68th Leg., R.S., ch. 640, § 3, 1983 Tex. Gen. Laws 4079, 4080. An earlier Attorney General opinion had concluded that the analog conflict-of-interest provision nullified the common law for local government officials. *See* Tex. Att'y Gen. Op. No. JM-424 (1986) at 4, 8–9. The two provisions were similar, but the analog statute contained additional language that the section 572.058 predecessor did not. Specifically, the analog provision provided that "[t]he governing body of a governmental entity *may contract* for the purchase of services or personal property with a business entity in which a member of the governing body has a substantial interest if" certain conditions existed. Tex. Att'y Gen. Op. No. JM-671 (1987) at 5 (quoting article 988b) (emphasis added). Because the section 572.058 predecessor lacked similar "may contract" language, JM-671 concluded it did not expressly contemplate contract formation and thus did not apply to contracts. *Id.* at 6.

2. **JM-671 relied too heavily on the legislative history.**

JM-671 relied heavily on the legislative history of the predecessor statute to section 572.058. *See id.* Texas courts have since cautioned against misplaced reliance on such history. *See, e.g.*, *Brown v. City of Houston*, 660 S.W.3d 749, 755 (Tex. 2023) ("Legislative history is generally useless to courts—indeed, it can be worse than useless because it is manipulable and relies on what never was the law."). Specifically, JM-671 noted that legislative conference committee members "expressed the opinion that the restriction on voting by members of the legislature in article III, section 22 of the Texas Constitution should also apply to members of boards and commissions." Tex. Att'y Gen. Op. No. JM-671 (1987) at 6. Because the constitutional provision was applicable to legislators and because legislators "do not enter into contracts for the state," JM-671 opined without analysis that it was "reasonable to conclude" that section 572.058's predecessor did not apply to contracts. *Id.* at 7. We disagree. Were a court to even consider this legislative history today, it would be unlikely to find JM-671's inference reasonable.

3. **A court considering the question anew would likely conclude that section 572.058 applies to contracts.**

A court considering the effect of section 572.058 on contracts would begin with its text to ascertain the Legislature's intent. *See Colorado Cnty. v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017). Courts look "first and foremost in the statutory text, and where text is clear, text is determinative

of intent." *Id.* (cleaned up) (acknowledging that "[t]he plain meaning of the text is the best expression of legislative intent").

The text of 572.058 expressly provides that it applies to an officer "who has a personal or private interest in a measure, proposal, or decision pending before the board or commission . . . ." TEX. GOV'T CODE § 572.058(a). A governmental body considering whether to enter a contract, and under what terms, is making a decision. *See* NEW OXFORD AMERICAN DICTIONARY 449 (3d ed. 2010) (defining "decision" to mean "a conclusion or resolution reached after consideration; the action or process of deciding something or of resolving a question"). There is no language in section 572.058 suggesting that contract formation should be excluded from its purview. Thus, a court would likely construe section 572.058 to encompass decisions about contract formation. *See O'Brien v. State*, 544 S.W.3d 376, 384 (Tex. Crim. App. 2018) ("If the plain language is clear and unambiguous, our analysis ends because the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." (quotation marks omitted)). Moreover, the "contract with" language from the local-government-official analog statute that was seminal to JM-671 no longer exists[10] such that a court today comparing 572.058 with the analog statute's successor, chapter 171 of the Local Government Code would have no basis to construe section 572.058 in conjunction with it.[11]

For these reasons, a court would likely conclude that section 572.058 includes contract formation, or stated differently, that section 572.058 applies to a governmental body's decision to enter a contract, including a grant award. Accordingly, we overrule JM-671 and its progeny to the extent they conflict with our opinion here.[12]

**A court would likely conclude that section 572.058 abrogates the common-law rule articulated in *Meyers v. Walker*.**

Absent the impediment of JM-671, we must newly determine whether section 572.058 abrogates the strict rule in *Meyers v. Walker*. The Texas Supreme Court has explained that a statute can only modify or abrogate common law rules when that is what the Legislature clearly intends. *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015). Such abrogation is generally disfavored, and courts examine the statute's plain language for the Legislature's clear intention to replace the common law. *Id.*; *Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007) ("Of course, statutes can modify common law rules, but before we construe one to do so, we must look carefully to be sure that was what the Legislature intended."); *Am. Nat'l Ins. Co. v. Arce*, 672 S.W.3d 347, 355 (Tex. 2023) ("It goes without saying that statutes can modify or displace common-law rules, but . . . we must ascertain whether [the

---

[10]The relevant language was removed shortly after JM-671 was issued. *See* Act of May 27, 1987, 70th Leg., R.S., ch. 362, § 1, 1987 Tex. Gen. Laws 1798, 1800.

[11]Even if the language still existed and if a court were it to consider it, a court would be unlikely to determine that the "contract with" language of article 988b made contract formation something other than a "decision" under chapter 572. That is, a court would be unlikely to exclude the decision to enter a contract from the scope of possible action by a governmental body that would be subject to the disclosure and recusal requirement of section 572.058.

[12]*See generally* Tex. Att'y Gen. Op. Nos. KP-0259 (2019), GA-0351 (2005), JC-484 (2002), JC-455 (2002), JC-437 (2001), DM-310 (1994); Tex. Att'y Gen. LO-97-052, LO-93-12, LO-92-52, LO-88-44.

statute] actually does so."). Courts will construe section 572.058 as abrogating the common law "only if there exists a clear repugnance between the two." *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 437 (Tex. 2016) (quotation marks omitted).

In section 572.058, the Legislature changes the conflict-of-interest rule from the common law in at least three important ways. First, under the common law, an officer cannot cure the conflict by recusal. *See Delta Elec. Constr. Co v. City of San Antonio*, 437 S.W.2d 602, 608 –09 (Tex. App.—San Antonio 1969, writ ref'd n.r.e.). Section 572.058 instead requires the officer to publicly disclose the interest and "not vote or otherwise participate in the decision." TEX. GOV'T CODE § 572.058(a). Second, the common law pertained only to pecuniary, or financial, interests. *See Meyers*, 276 S.W. at 307 ("If a public official directly or indirectly has a pecuniary interest in a contract" the contract is against public policy.). Section 572.058 expands the interests for which disclosure is required to any "personal or private interest." TEX. GOV'T CODE § 572.058(a). And third, the common-law rule is limited to contracts, while section 572.058 applies to any "measure, proposal, or decision . . . ." *Compare Meyers*, 276 S.W. at 307, *with* TEX. GOV'T CODE § 572.058(a). Even without language expressly abrogating the common law, these differences show a clear repugnance between the two and indicate that the Legislature intended to modify the common law with a less strict, more expansive conflict-of-interest provision that covers and protects from conflicts not only the contractual decisions of governmental bodies that *Meyers v. Walker* addressed but that instead covers "any measure, proposal or decision." Accordingly, a court would likely conclude that section 572.058 abrogates the strict rule in *Meyers v. Walker*.

### Application of Government Code section 2261.252

You also ask if "section 572.058 applies, does it override the outright prohibition on contracts for goods and services contained in section 2261.252." Request Letter at 5. Government Code section 2261.252 addresses the disclosure of potential conflicts of interests. TEX. GOV'T CODE § 2261.252. Subsection 2261.252(a) provides that

> [e]ach state agency[13] . . . official who is involved in procurement or in contract management for a state agency shall disclose to the agency any potential conflict of interest specified by state law or agency policy that is known by the . . . official with respect to any contract with a private vendor or bid for the purchase of goods or services from a private vendor by the agency.

*Id.* § 2261.252(a) (footnote added).

Government Code section 2261.252 also prohibits certain contracts. *See id.* § 2261.252. Subsection 2261.252(b) states that "[a] state agency may not enter into a contract for the purchase of goods or services with a private vendor" with whom an agency official, including a member of the agency's governing body has a financial interest. *Id.* § 2261.252(b)(1). Relevant here, a

---

[13]Subsection 2261.002(2) defines "[s]tate agency" by reference to subsection 2151.002(1). TEX. GOV'T CODE § 2261.002(2); *see id.* § 2151.002(1) (defining "state agency" to mean "a department, commission, board, office, or other agency in the executive branch of state government created by the state constitution or a state statute").

contract "includes a grant . . . under which the recipient of the grant is required to perform a specific act or service, supply a specific type of product, or both." *Id.* § 2261.002(1). An official has a "financial interest" in a person[14] if the official:

> (1) owns or controls, directly or indirectly, an ownership interest of at least one percent in the person, including the right to share in profits, proceeds, or capital gains; or

> (2) could reasonably foresee that a contract with the person could result in a financial benefit to the . . . official.

*Id.* § 2261.252(c). No language in section 572.058 expressly overrides anything in section 2261.252. *See generally id.* § 572.058.

We first address the potential conflicting interaction between section 572.058 and 2261.252 more thoroughly. *See* Request Letter at 5–6. Courts construe statutes in a way that harmonizes and gives effect to the different provisions when possible. *Harbor Am. Cent., Inc. v. Armand*, No. 04-22-00280-CV, 2024 WL 1289596, at *4 (Tex. App.—San Antonio Mar. 27, 2024, no pet. h.); *see also* TEX. GOV'T CODE §§ 311.025, .026(a). If two statutes "irreconcilably conflict and one statute is a general provision and the other is more specific, the specific statute prevails as an exception to the general provision, unless (1) the Legislature enacted the general provision later than the specific statute; and (2) the Legislature manifestly intended that the general provision prevail." *Dailing v. State*, 546 S.W.3d 438, 443 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing TEX. GOV'T CODE § 311.026). If two statutes are irreconcilable and neither statute is more specific than the other, the later-enacted statute prevails. *See* TEX. GOV'T CODE § 311.025. That said, it is only when the two provisions are irreconcilable that the courts will look to these rules of construction to determine which provision applies. *See Armand*, 2024 WL 1289596, at *4; *see also* TEX. GOV'T CODE §§ 311.025, .026(b).

A mere difference between provisions is insufficient to constitute an irreconcilable conflict. *See Garcia v. State*, 669 S.W.2d 169, 171 (Tex. App.—Dallas 1984, writ ref'd). Irreconcilable conflict occurs when only one of the statutes can apply to a particular situation. *See Lomax v. State*, 233 S.W.3d 302, 312 (Tex. Crim. App. 2007); *see also Ferrell v. Univ. of Tex. Sys.*, 583 S.W.3d 805, 810–12 (Tex. App.—El Paso 2019, no pet.) (recognizing that if both statutory provisions' purposes can be given effect, they are not in conflict). We begin by determining whether subsection 2261.252(a) and subsection 572.058(a) irreconcilably conflict.

Subsection 572.058(a) requires an elected or appointed officer with a prohibited interest to "publicly disclose that fact" in an open meeting and provides that the officer "may not vote or otherwise participate in the decision." TEX. GOV'T CODE § 572.058(a). Subsection 2261.252(a) similarly provides that "[e]ach state agency employee or official who is involved in procurement or in contract management for a state agency shall disclose . . . any potential conflict of interest . . . ." *Id.* § 2261.252(a). In its application, subsection 2261.252(a) encompasses a potentially larger

---

[14]"Person" includes an artificial person. *See* TEX. GOV'T CODE § 311.005(2) (defining "[p]erson" to include legal entities in addition to individuals).

set of people by including employees, but it limits that set to only those involved in "procurement or in contract management . . . ." *Id.* And both provisions require the person with the conflicting interest to disclose it. *See id.* §§ 572.058(a), 2261.252(a). The interest in section 572.058 is "a personal or private interest in a measure, proposal, or decision pending before the board or commission . . . ." *Id.* § 572.058(a). The interest in section 2261.252 is a "potential conflict of interest specified by state law or agency policy that is known by the employee or official with respect to any contract with a private vendor or bid for the purchase of goods or services . . . ." *Id.* § 2261.252(a). To the extent a member of the Council has an interest that implicated both subsection 572.058(a) and subsection 2261.252(a), the member could disclose the interest as set forth in both provisions and thereby comply with both. A court would likely conclude that these two subsections do not conflict. Accordingly, an entity subject to both provisions must comply with both.

Yet, we question whether section 2261.252 applies under these circumstances. By its plain terms, section 2261.252 "applies only to a contract for the purchase of goods or services solicited through a purchase order if the amount of the purchase order exceeds $25,000." *Id.* § 2261.252(e). You do not expressly indicate that the Council's grant award process involves "a contract for the purchase of . . . services solicited through a purchase order." *Id.*; *see generally* Request Letter at 1–7. And the administrative rules for the Opioid Abatement Fund Program affirmatively set out an issuance plan and provide for the review of grant applications, the awarding of grants, as well as continued monitoring for a grant award performance and expenditures thereunder. *See* 34 TEX. ADMIN. CODE §§ 16.202 (2023) (Comptroller of Pub. Accts., Grant Issuance Plan), 16.209 (2023) (Comptroller of Pub. Accts., Amount of Grant Award), 16.208 (2023) (Comptroller of Pub. Accts., Grant Application Review), 16.219 (2023) (Comptroller of Pub. Accts., Monitoring Grant Award Performance and Expenditures). Nothing in these rules provide that a grant is awarded pursuant to a purchase order. While this ultimately is a fact question that we leave to the Council in the first instance, if the Council's granting of award does not involve such solicitation through a purchase order, then by the plain terms of subsection 2261.252(e) the section does not apply to the grant. *See* TEX. GOV'T CODE § 2261.252(e).

**S U M M A R Y**

In Opinion JM-671, this office concluded that the statutory predecessor to Government Code subsection 572.058(a) did not apply to contracts and so did not abrogate the common law as stated in *Meyers v. Walker*. Instead, JM-671 concluded that the strict conflict-of-interest rule from *Meyers v. Walker* governed contract formation and voided any contract entered into by an agency if a member of its governmental body had any pecuniary interest in the contract. Since the issuance of JM-671, this office has not reconsidered its reasoning or conclusion. Doing so here, this office concludes it is likely that a court considering the questions addressed in JM-671 would decide them differently today. Accordingly, we hereby overrule JM-671 and its progeny to the extent they conflict with this opinion.

Further, a court newly considering whether subsection 572.058(a) applies to contracts and abrogates the common law would likely conclude that it does. Under subsection 572.058(a), an elected or appointed officer with a conflict must disclose the interest and recuse him or herself from participating in the matter. Accordingly, neither JM-671 nor subsection 572.058(a) is a bar to the award of a grant by the Texas Opioid Abatement Fund Council ("Council") established in chapter 403 of the Government Code. Instead, Council members must publicly disclose their interests in an open meeting of the Council and must refrain from deliberating or voting on matters as directed by section 572.058. Accordingly, Council members may participate in deliberations and vote on matters that do not involve their personal or professional interest.

Government Code chapter 2261 provides for contracting standards and oversight for state contracting. Subsection 2261.252(e) provides that section 2261.252 applies only to a contract for the purchase of goods or services solicited through a purchase order if the amount of the purchase order exceeds $25,000. We question whether a grant award from the Council is made via a purchase order. But we do not resolve fact questions in an Attorney General Opinion and leave the determination about the application of section 2261.252 to the Council.

Very truly yours,

K E N   P A X T O N
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

AUSTIN KINGHORN
Chair, Opinion Committee